144 N.J. Super. 579 (1976)
366 A.2d 733
IN THE MATTER OF THE APPLICATION FOR THE COMMITMENT OF J.C.G. TO TRENTON PSYCHIATRIC HOSPITAL.
Superior Court of New Jersey, Hudson County Court, Law Division.
October 14, 1976.
*581 Patrick House Legal Clinic (Eric A. Summerville appearing) for Patricia Paterson.
Marie A. Clemente-Clegg, guardian ad litem and attorney for the minor.
William F. Hyland, Attorney General of the State of New Jersey (Ms. Joan Holleran Walsack, Deputy Attorney General, appearing) for the Department of Institutions and Agencies.
Joseph B. McFeely, County Adjuster, for the County of Hudson.
YOUNG, J.C.C.
The right of a natural parent, who was applicant for the involuntary civil commitment of her 13-year-old daughter, to obtain through counsel access to the court records and the hospital reports declared confidential by both statute, N.J.S.A. 30:4-24.3 and by rule of court, R. 4:74-7(i), is the issue presented by her motion, which is resisted by the guardian ad litem and attorney for the minor, and by the Attorney General. More specifically, the parent's counsel moves for (1) an order to inspect any and all court documents and records in the matter; (2) for an order to compel Trenton Psychiatric Hospital to release information, and (3) for an order setting a date for review of the commitment.
The regularity of the involuntary civil commitment proceedings is not challenged. Upon application of Mrs. Patricia Paterson, supported by the certificates of two licensed physicians, an order of temporary commitment of her 13-year-old daughter, J.C.G., to Trenton Psychiatric Hospital *582 was entered March 30, 1976. As provided by the applicable rule, the judge appointed a guardian ad litem who is also an attorney-at-law, Marie A. Clemente-Clegg, and also fixed the date for a commitment hearing on April 9, 1976. R. 4:74-7 (j). At the hearing Mrs. Paterson testified. It will suffice for the purposes of this opinion to note that she expressed the desire that her daughter remain at the hospital. On the record established, the findings of this court were put on the record in support of an order of final commitment to the same hospital.
The reasons advanced by the parent in support of the motion are set forth in her certification, the relevant paragraphs of which are here quoted:
6. I fear that decisions concerning my daughter which will greatly affect her future have been made and will be made without my consent and without the benefit of my special perspective as the child's mother.
7. I also fear that the treatment and care that my daughter is presently receiving is not in her best interest. She has apparently declined and her condition aggravated during the period in which she has been in the custody (sic) of the Division of Youth and Family Services.
8. My desire, at this time, is that my daughter, J.G., will be released from confinement at the Trenton Psychiatric Hospital and that she be permitted to reside at home with her family while participating in an out-patient program for care and treatment.
At the argument counsel for Mrs. Paterson said he sought disclosure of the confidential records so that private physicians to be engaged by the parent could determine whether the treatment currently being rendered is proper. In opposition, the attorney and guardian ad litem for the minor argued that disclosure would not be in the best interests of the child. The Deputy Attorney General asserted in opposition that any information must come from the guardian ad litem who, under the law, is charged with safeguarding the best interests of the minor. The court reserved decision and directed the guardian ad litem to inquire into the modalities *583 of treatment and to submit a written report which was received by the court September 10, 1976.
Movant's initial request is for an order to permit her counsel to inspect any and all court records and documents on file in this matter. The provisions of R. 4:74-7(i), which remain unchanged by the amendments effective September 13, 1976, control the disposition of the motion. The subsection reads as follows:
(1) Filing. All documents referred to in this rule shall be filed in the County Clerk's office together with an affidavit of service of all notices herein required. The files of the County Clerk shall not, however, be open to inspection by any person other than assigned counsel, guardian ad litem and the county adjuster except on court order in exceptional circumstances and for good cause shown. [Emphasis supplied]
The certification of the parent expresses her apprehensions that decisions will be made without her consent by the professional staff of the treating hospital, and that those decisions are not in the best interests of her daughter. As not a scintilla of evidence has been offered in support of those apprehensions this court concludes that they are groundless and advanced as a facade designed to secure the premature discharge of the minor to a home life, or more accurately, the absence of home life, which the evidence overwhelmingly established furnished the incubative environment of the minor's emotional disorder.
The comments to Rule 4:74, prepared by Judge Pressler, emphasize the component of confidentiality which is to attend procedural due process at all stages of the involuntary civil commitment proceeding. The shield of confidentiality is especially indispensable when a minor is the subject of the commitment proceeding. It is for that reason that the rule imposes a formidable burden upon any person, other than assigned counsel, guardian ad litem and county adjuster, who attempts to breach that safeguard of confidentiality. Mrs. Paterson has not sustained that burden on this motion.
*584 The second aspect of the motion requests an order directed to the Trenton Psychiatric Hospital "to release information to the movant's attorney." It should be noted that this phase of the application is directed to the disclosure of hospital records, not to the disclosure of documents filed with the county clerk under provisions of R. 4:74-7(i). While movant's counsel does not rely upon N.J.S.A. 30:4-23, the statute dealing with the admission of the mentally ill to state hospitals, this court deems provisions of the statute to be read in pari materia with the provisions of R. 4:74-7. The terms of N.J.S.A. 30:4-24.3 are here set forth:

30:4-24.3. Confidential nature of certificates, applications, records and reports

All certificates, applications, records, and reports made pursuant to the provisions of this Title and directly or indirectly identifying any individual presently or formerly receiving services in a noncorrectional institution under this Title, or for whom services in a noncorrectional institution shall be sought under this act shall be kept confidential and shall not be disclosed by any person, except insofar as:
(1) the individual identified or his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent; or
(2) disclosure may be necessary to carry out any of the provisions of this act or of article 9 of chapter 82 of Title 2A of the New Jersey Statutes; or
(3) a court may direct, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest.
Nothing in this section shall preclude disclosure, upon proper inquiry, of information as to a patient's current medical condition to any relative or friend or to the patient's personal physician or attorney if it appears that the information is to be used directly or indirectly for the benefit of the patient. [L. 1965, c. 59, § 11]
The cloak of confidentiality is specifically mentioned in the statute. The court notes that Mrs. Paterson has signed an authorization that the records of the treating hospital pertaining to her daughter be made available to her counsel. No reasons other than those already noted addressed to records filed with the county clerk have been advanced to support this phase of the motion.
*585 In Patient's (Bush) v. Kallen, 123 N.J. Super. 175 (App. Div. 1973), which interpreted and applied the provisions of the statute in question, it was the attorney who represented several adult patients who moved to compel disclosure. By contrast, on the motion before this court it is the attorney appointed to represent the patient and guardian ad litem who resists disclosure, and is supported in her position by the Deputy Attorney General.
What are the rights of the parent vis-a-vis those of the guardian ad litem in the premises? The appointment of a guardian ad litem is mandated by the provisions of R. 4:74-7(j). Such appointment is mandated even when the natural parent is the applicant for the involuntary civil commitment of a minor. In the comment upon R. 4:74-7(j) Judge Pressler took note of the potentially inherent adverse role of the natural parent to that of the guardian ad litem in the excerpt which follows:
11. Paragraph (j) of this rule requires that minors may be committed only in accordance with paragraph (e) of this rule. This provision is intended to prevent a so-called voluntary commitment of a minor by his parent or other person in loco parentis. * * *
Where the parent is the applicant and the child the subject of commitment proceedings, courts have recognized that the interests of the parent and child are in potential conflict. After noting the adversary role of the parent assumed by entering a complaint in a commitment proceeding, the appellate court of the District of Columbia observed that the law's customary deference to the judgment of the parent cannot be allowed to obscure the fact that the parent and the child may have opposing interests, and that to entrust the child's procedural and substantive rights to the parent effectively abolishes those rights. In re Sippy, 97 A. 2d 455 (D.C. Mun. Ct. App. 1953).
As one scholar of the subject of law and mental health has observed, "Often the problems which lead parents to seek hospitalization of their child can be traced to family *586 difficulties and not just the `illness' of an individual child." Ellis, "Volunteering Children: Parental Commitment of Minors to Mental Institutions," 62 Calif. L. Rev. 840, 859 (1974). In the matter before this court the record exemplifies that observation. In opposing disclosure, counsel for the Department of Institutions and Agencies has pointed to the case history of Patricia Paterson with the New Jersey Division of Youth and Family Services. That history reflects a pattern of placements and reclamations of J. by her mother which pattern appears to serve primarily the mother's interest and convenience.
The rule which mandates the appointment of a guardian ad litem, R. 4:74-7(j), is intended not only to prevent the so-called voluntary commitment of a minor by his parent, as Judge Pressler notes in her comments to the rule, but is also intended to prevent efforts to discharge a child from treatment by a parent who may be acting from motives not in the best interests of the child. Upon appointment, the guardian ad litem, by the very title of the office, stands in the eyes of the law as a shield against all the world for the protection of the interests of the ward. That shield, on occasion may be, and indeed must be, interposed even against the motives and designs of a natural parent. See Solender, "The Guardian ad Litem: A Valuable Representative or an Illusory Safeguard?," 7 Texas Tech. L. Rev. 619 (1976).
The guardian ad litem, in the matter of the involuntary civil commitment of a minor, is charged with the gravest responsibility to see that the minor is not deprived of his or her liberty without due process of law. It is with equal solicitude that the guardian ad litem is to resist steps which are designed to terminate institutional treatment when in the opinion of the guardian such a course would be detrimental to his charge. The fact that the challenge to a minor's welfare comes from a natural parent in either instance of so-called voluntary commitment or premature termination of commitment does not derogate from the sensitive responsibilities reposed in and exercised by the guardian ad litem. As *587 a noted scholar has cogently observed: "To assume that the family's and patient's interests are always, or nearly always, compatible is to ignore the realities of family strife. At times it is one's family against which one needs the most protection." Kittrie, The Right to be Different: Deviance and Enforced Therapy, 66, 86 (1971).
Judicial recognition of the deference to be accorded the position of the guardian ad litem as against the express wishes of the natural parent is shown upon applications for orders for leave to administer life-saving therapy to a child. See State v. Perricone, 37 N.J. 463 (1962), cert. den. 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124. Judicial limitations have been placed upon parental discretion to give effect to the state's interest as parens patriae. Cf. Wisconsin v. Yoder, 406 U.S. 205, 233-234, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Thus, courts have ordered psychiatric treatment for children over the objection of their parents. In re Weintraub, 166 Pa. Super. 342, 71 A.2d 823 (Super. Ct. 1950). The objectivity of the guardian ad litem is essential since the child may be reluctant to assent to a position about his or her welfare when faced with stern parental disapproval.
Mrs. Paterson predicates her motion for disclosure of treatment records upon her concern for the well-being of her daughter. That parental concern is recognized and respected by this court. However, when an order of final commitment is entered, the responsibility for the care and treatment of the patient becomes invested in the court. It is beyond question in New Jersey that a person committed to a state hospital for the mentally ill has a right to receive treatment; the appropriateness and duration of that treatment is subject to judicial review. In re D.D., 118 N.J. Super. 1 (App. Div. 1971). The comments and wishes of interested relatives, treating physicians, social workers, and the patient herself are solicited and welcomed by the court, but the final decision in the premises is reposed in the court.
*588 It is the determination of this court that when the parent assumes an adversarial role she may not waive the right to confidentiality of hospital records pertaining to the treatment of her child who has been the subject of involuntary civil commitment proceedings. N.J.S.A. 30:4-24.3. In the circumstances of this case the movant has failed to advance any reasons to persuade this court that the disclosure sought is to be used directly or indirectly for the benefit of the patient. Accordingly, the second aspect of the motion is denied.
The minor in these proceedings enjoys frequent weekend furloughs at home. Moreover, nothing in this opinion is to preclude the parent from receiving periodic progress reports upon inquiry to the hospital staff.
The review of the commitment as provided in the final order is scheduled within the month, which obviates the need to rule upon the final request of the motion which seeks an order setting a date for such review.