152 N.J. Super. 51 (1977)
377 A.2d 765
NEWARK BOARD OF EDUCATION, APPELLANT,
v.
NEWARK TEACHERS UNION, LOCAL 481, AFT, AFL-CIO, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1977.
Filing June 17, 1977.
Decided July 25, 1977.
*55 Before Judges LYNCH, MILMED and ANTELL.
Mr. Robert T. Pickett argued the cause for appellant (Messrs. Pickett & Jennings, attorneys; Mr. Pickett, Mr. Reginald A. Jennings and Mr. Gary H. Shapiro on the brief).
Mr. Sidney H. Lehmann, general counsel for intervenor on appeal Public Employment Relations Commission, argued the cause for the Commission.
Messrs. Liss & Meisenbacher submitted a statement in lieu of brief on behalf of respondent Newark Teachers Union (Mr. Raymond Meisenbacher on the statement).
Filing of Supplemental Brief on Behalf of Intervenor Public Employment Relations Commission allowed June 17, 1977.
The opinion of the majority was delivered by MILMED, J.A.D.
By leave granted, the Newark Board of Education (board) appeals from an interlocutory decision of the Public Employment Relations Commission (Commission) affirming a ruling made by a Commission hearing examiner denying motions to quash two subpoenas duces tecum issued in connection with an unfair practice hearing pending before the hearing examiner.
The essential facts are not in dispute. The Newark Teachers Union (union) and the board were parties to a collective negotiations agreement which expired on January 31, *56 1976. Negotiations up to the termination date failed to produce a new agreement and a labor dispute ensued when the old contract expired. With the assistance of two staff mediators from the Commission, negotiations between the parties continued during the period of the dispute. The negotiations were successful in ending the dispute although not in resolving all the terms of a new contract.
Thereafter, the union filed an unfair practice charge against the board, alleging that the parties had agreed on certain contractual items but that "the Board refused to reduce the * * * negotiated agreement to writing and to sign that agreement."[1] The alleged negotiated terms related to three economic items, i.e., (1) a salary schedule for aides, (2) incorporation of learning disabilities teacher consultants into the salary guide for psychologists and social workers, and (3) a uniform percentage increase in the monetary amount paid for certain incidental duties not specifically negotiated on an item-by-item basis. The union claims that the first two items were agreed to on February 3, 1976 and that agreement resulted from board acceptance of union counterproposals transmitted from the Union to the board through a Commission mediator during a time when the parties were not in each other's presence. In regard to the third item, the union claims that the parties reached agreement during a face-to-face negotiating session on February 7, 1976, the session being conducted by one of the Commission mediators.
Based on the union's allegations, the Commission issued a complaint and notice of hearing. The board denied the allegations of the unfair practice charge. Before commencement of the hearing the attorney for the union applied to the Commission's hearing examiner assigned to the case for two subpoenas duces tecum, one directed to Gerald L. Dorf, *57 special counsel to the board, who represented the board throughout the negotiations from February 2 through February 8, 1976, and the other directed to Robert T. Pickett of Pickett & Jennings, general counsel to the board. Both subpoenas sought the production of the following documents:
1. Any Union counterproposals to the Board's money offers transmitted to the Board by the Union through the Mediators, Glassen and Mastrianni.
2. Transcript of all minutes and notes taken by the Board including those taken by Thomas Savage[2] at all meetings, between the parties from February 2, 1976 through February 8, 1976.
The subpoena directed to Dorf additionally sought production of the
3. Entire file and contents thereof of notes and writings made during the negotiations between the parties between February 2 and 8, 1976 now in the possession of Gerald Dorf.
Both Dorf and Pickett moved to quash the subpoenas. The hearing examiner issued a written "ruling" denying both motions. On appeal to the Commission, the denial was affirmed substantially for the reasons expressed by the hearing examiner. The decision of the Commission was issued September 22, 1976. We granted the board's motion for leave to appeal from that decision as well as its motion for a stay of the decision pending the appeal. We also granted the Commission's motion for leave to intervene, accelerated the appeal, and stayed enforcement of the subpoenas.
On this appeal the board claims, as it essentially did before the agency, that (1) the Commission lacks authority to issue subpoenas in unfair practice cases; (2) "[t]he documents and information required by the subpoena duces tecum fall within the shroud of confidentiality afforded by P.E.R.C. *58 Emergency R. 19:12-3.4"; and (3) an "Attorney's negotiating notes are `privileged' and therefore not discoverable in an unfair practice case."
The board argues that the Commission's subpoena powers are, by reason of N.J.S.A. 34:13A-6(e), limited to "representation" cases and do not extend to "unfair practice" cases. From our review of the New Jersey Employer-Employee Relations Act, as amended and supplemented, N.J.S.A. 34:13A-1, et seq., we perceive no legislative intent to so restrict the authority of the Commission.
The following sections of the statute, prescribing functions, powers and duties of the Commission, are particularly pertinent here:
N.J.S.A. 34:13A-5.4(c). The commission shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in subsections a. and b. above. Whenever it is charged that anyone has engaged or is engaging in any such unfair practice, the commission, or any designated agent thereof, shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charged and including a notice of hearing containing the date and place of hearing before the commission or any designated agent thereof; provided that no complaint shall issue based upon any unfair practice occurring more than 6 months prior to the filing of the charge unless the person aggrieved thereby was prevented from filing such charge in which event the 6 months period shall be computed from the day he was no longer so prevented.
In any such proceeding, the provisions of the Administrative Procedure Act P.L. 1968, c. 410 (C. 52:14B-1 et seq) shall be applicable. Evidence shall be taken at the hearing and filed with the commission. If, upon all the evidence taken, the commission shall determine that any party charged has engaged or is engaging in any such unfair practice, the commission shall state its findings of fact and conclusions of law and issue and cause to be served on such party an order requiring such party to cease and desist from such unfair practice, and to take such reasonable affirmative action as will effectuate the policies of this act. All cases in which a complaint and notice of hearing on a charge is actually issued by the commission, shall be prosecuted before the commission or its agent, or both, by the representative of the employee organization or party filing the charge or his authorized representative.

* * * * * * * *
N.J.S.A. 34:13A-6(e). For the purposes of this section the Division of Public Employment Relations shall have the authority *59 and power to hold hearings, subpena, witnesses, compel their attendance, administer oaths, take the testimony or deposition of any person under oath, and in connection therewith, to issue subpenas duces tecum, and to require the production and examination of any governmental or other books or papers relating to any matter described above.
N.J.S.A. 34:13A-6(f). In carrying out any of its work under this act, the board may designate one of its members, or an officer of the board to act in its behalf and may delegate to such designee one or more of its duties hereunder and, for such purpose, such designee shall have all the powers hereby conferred upon the board in connection with the discharge of the duty or duties so delegated. In carrying out any of its work under this act, the commission may designate one of its members or an officer of the commission to act on its behalf and may delegate to such designee one or more of its duties hereunder and, for such purpose, such designee shall have all of the powers hereby conferred upon the commission in connection with the discharge of the duty or duties so delegated.
N.J.S.A. 34:13A-6(g). The board and commission may also appoint and designate other persons or groups of persons to act for and on its behalf and may delegate to such persons or groups of persons any and all of the powers conferred upon it by this act so far as it is reasonably necessary to effectuate the purposes of this act. Such persons shall serve without compensation but shall be reimbursed for any necessary expenses.
In construing the statute care should be taken not to limit interpretation to a single subsection. See 2A Sutherland, Statutory Construction (4 ed. Sands, 1973), § 46.05 at 56. And, as this court observed in regard to another aspect of the same legislation:
It is elementary that a grant of authority to an administrative agency is to be liberally construed so as to enable the agency to discharge its statutory responsibilities. In re Promulgation of Rules of Practice, 132 N.J. Super. 45, 48-49 (App. Div. 1974). In short, the authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. Cammarata v. Essex Cty. Park Comm'n, 26 N.J. 404, 411 (1958). Moreover, when construing a statutory enactment it is fundamental that the general intention of the act controls the interpretation of its parts. Hackensack Water Co. v. Ruta, 3 N.J. 139, 147 (1949). All statutory provisions are to be related and effect given to each if such be reasonably possible. Jamouneau v. Harner, 16 N.J. 500, 513 (1954). [Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n, 144 N.J. Super. 521, 524 (App. Div. 1976)] *60 Viewing the statute in this manner, we are entirely satisfied that the subpoena power provided in N.J.S.A. 34: 13A-6(e) may be utilized by the Commission in unfair practice proceedings to the end that the "exclusive power" vested in it by N.J.S.A. 34:13A-5.4(c) may be properly and effectively exercised. See Englewood Bd. of Ed. v. Englewood Teachers, 135 N.J. Super. 120, 124-125 (App. Div. 1975).
The administrative process involved in proceedings under N.J.S.A. 34:13A-5.4(c) is adjudicatory in nature, requiring application of essential elements of due process. In re Plainfield-Union Water Co., 11 N.J. 382, 392-395 (1953); Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104, 113-114, 118 (App. Div. 1969), aff'd 54 N.J. 11 (1969).
In any proceeding under N.J.S.A. 34:13A-5.4 (c) the provisions of the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., are applicable. At the hearing on the unfair practice charge, evidence is required to be taken and filed with the Commission. If, on the evidence so taken, the Commission determines that a party charged has engaged or is engaging in such unfair practice, it must state its findings of fact and conclusions of law. Meaningful exercise of these quasi-judicial functions would indeed be thwarted if the statute were construed to deny the Commission authority to issue subpoenas for the attendance of essential witnesses and the production of relevant documents in such cases. Denial of such authority could not have been the intention of the Legislature. "The presumption is against useless legislation." Lanning v. Hudson Cty. Ct. of Common Pleas, 127 N.J.L. 10, 16 (Sup. Ct. 1941), aff'd 127 N.J.L. 604, 605 (E. & A. 1942). See also, Alexander v. Cunningham Roofing Co., Inc., 124 N.J.L. 390, 394 (Sup. Ct. 1940), aff'd 125 N.J.L. 277 (E. & A. 1940). The legislative intent here is obvious. The Commission is to determine unfair practice cases only after full (not partial) hearings.
*61 The board argues that N.J.A.C. 19:12-3.4 precludes the production of the documents sought by the union. We disagree. That Commission rule, entitled "Mediator's confidentiality," reads as follows:
Information disclosed by a party to a mediator in the performance of his mediation functions shall not be divulged voluntarily or by compulsion. All files, records, reports, documents or other papers received or prepared by a mediator while serving in such capacity shall be classified as confidential. The mediator shall not produce any confidential records of, or testify in regard to, any mediation conducted by him, on behalf of any party to any cause pending in any type of proceeding, including but not limited to unfair practice proceedings under chapter 14 of this title.
The issue raised in regard to the application of this rule is fully explored by the hearing examiner in his written "ruling" denying the motions to quash. We agree, in essence, with his analysis, concurred in by the Commission. Culled therefrom are the following pertinent findings and conclusions:
* * * the charging party [Union] should be afforded every reasonable opportunity to examine books and records in the possession of the respondent [board] which it believes may disclose, on their face, evidence of agreement or, which may, in conjunction with examination of the witness or witnesses who prepared them, establish evidence of agreement. Discovery may not be foreclosed because those documents (here, union counterproposals alleged to be in the respondent's possession and minutes and notes taken in the course of face-to-face negotiations) have either been transmitted by the mediator or have been prepared by the negotiator during across-the-table negotiations with the other party in the presence of the mediator. In neither case has the confidentiality of the mediation process been impaired.
* * * insofar as these counter-proposals were provided to the mediator for transfer to the respondent, they do not constitute "information disclosed by a party to a mediator in the performance of his mediation functions" prohibited from disclosure under § 19:12-3.4 of the Commission's rules. Such counter-proposals lose any confidentiality by virtue of the fact that the charging party intended that they be weighed on their merits by the respondent in an effort to arrive at an agreement.
* * * The undersigned does not construe the rule [N.J.A.C. 19: 12-3.4] so narrowly as to preclude from discovery documents transmitted *62 by one party to the other through use of a mediator intermediary. While I reject the argument that union counter-proposals received by respondent from a mediator are confidential and not subject to disclosure, as I have a duty to insure that the confidentiality of the mediation process itself is not impaired, I will require that any union counter-proposals in the respondent's possession which are subjects of the subpoenas be produced to the undersigned for an initial inspection in camera so that any notations or writings thereon attributed to a mediator may be removed prior to forwarding to the charging party.
With respect to the negotiation notes taken by respondent negotiators, * * * the subpoenas are limited and, I construe them to be limited, to production of those negotiation notes made by the attorneys or others for the respondent relating to the subject matters under negotiation while in face-to-face negotiations with representatives of the charging party. Insofar as those notes contain the contemporaneous writings of the note taker of the respondent relating to the subject matters under negotiation between the parties they are subject to production pursuant to these subpoenas, even though taken in the presence of a mediator. Such notes, if any exist, relate to the note taker's function in the negotiation process and not to confidential communications with the mediator. They are therefore, not subject to the rule relating to the mediator's confidentiality.[3]
Finally, we find no merit in the board's claim that an attorney's negotiating notes are "privileged" and not subject to discovery in an unfair practice case. In regard to this issue, the hearing examiner properly found that:
* * * the minutes, notes and writings sought relate solely to material comprising writings made by negotiators, whether they be attorneys or not, of, and during the course of, negotiations with the charging party. Such material is not privileged as an attorney's work product or material prepared for litigation.[4] Insofar as any of the notes taken by the attorney may contain references to communications from his client (as distinguished from notes taken in his role as negotiator) such notes need not be produced.
*63 See Hansen v. Janitschek, 31 N.J. 545 (1960), adopting dissenting opinion reported at 57 N.J. Super. [418] 429 (App. Div. 1959).
The privilege accorded to communications between attorney and client is limited to communications made to the attorney as such and in his professional capacity. Where an attorney is employed for some other purpose than to conduct litigation, to give advice on legal questions, or to engage in some other activity peculiarly within the province of an attorney at law, communications made during the course of that employment are not accorded protection from disclosure. This is the case where an attorney acts as an agent for another, as an attorney in fact, as a negotiator or agent in a commercial venture, or as a notary public. [81 Am. Jur.2d, Witnesses, § 182 at 217-218]
The interlocutory decision of the Public Employment Relations Commission under review is, in all respects, affirmed. Gerald L. Dorf and Robert T. Pickett are directed to comply fully with the respective subpoenas served upon them, in accordance with the rulings of the hearing examiner, affirmed by the Commission.
ANTELL, J.A.D. (dissenting).
N.J.S.A. 34:13A-6, enacted in 1968, authorizes the Commission to deal with specified forms of labor disputes. In subsection (c) it categorically provides the Division of Public Employment Relations with the power to subpoena witnesses and issue subpoenas duces tecum "[f]or the purposes of this section." It was held in Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, 56 N.J. 579 (1970), that this section did not encompass unfair labor practice charges. N.J.S.A. 34:13A-5.4, empowering the Commission to hear such charges, was passed in 1974, and the case before us arises under this section. It does not authorize the Commission to issue subpoenas, stating only that "the provisions of the Administrative Procedure Act P.L. 1968, c. 410 (C. 52:14B-1 et seq.) shall be applicable." That enactment is also silent as to the power of subpoena.
It is axiomatic that what the Legislature has pointedly omitted the courts will not supply. Craster v. Newark Bd. of Comm'rs, 9 N.J. 225, 330 (1952).
*64 The courts are not at liberty to indulge in a presumption that the Legislature intended something more than what it actually wrote in the law. * * * This court is enjoined to interpret and enforce the legislative will as written, and not according to some supposed unexpressed intention. [Graham v. Asbury Park, 64 N.J. Super. 385, 394 (Law Div. 1960), rev'd on other grounds 69 N.J. Super. 256 (App. Div. 1961), aff'd 37 N.J. 166 (1962); citation omitted]
Also see, Lehman v. Kanane, 88 N.J. Super. 262, 265 (App. Div. 1965), certif. den. 45 N.J. 591 (1965); Zahorian v. Russell Fitt Real Est. Agency, 62 N.J. 399, 418 (1973) (Hall, J., dissenting); 2A Sutherland, Statutory Construction (4 ed. 1973), § 45.38 at 173. We are not free to read unwarranted meanings into an unambiguous statute, "even to subserve a supposedly desirable policy not effectuated by the act as written." R.H. Macy & Co. Inc. v. Director, Div. of Taxation, 77 N.J. Super. 155, 173 (App. Div. 1962), aff'd 41 N.J. 3 (1963).
It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers. Railroad Comm'n. of Indiana v. Grand Truck Western R. Co., 179 Ind. 255, 100 N.E. 852, 855 (1913).
The history of this legislative venture into the labor relations aspect of public employment has been marked by bitter controversy. Some insight into the intensity of feeling which it provoked is furnished by the testimony of the mayor of one large city, who expressed his determination "to fight this obnoxious piece of legislation that calls for the rape of our schoolchildren." Public Hearing on Senate Bill No. 1087, held May 7, 1974, at 8.
In my view we should be governed by the conservative spirit articulated in the following language by our highest court in Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra:
As we said in Lullo v. International Ass'n of Fire Fighters, supra, 55 N.J. 409, Chapter 303, L. 1968 is novel legislation in New Jersey. *65 For the first time the Legislature entered broadly into the field of labor relations in the public sector. Whether PERC should be invested with authority to hear and decide unfair labor practice charges and to issue various types of affirmative remedial orders respecting them in [sic] an important policy question. In our judgment, a policy question of that significance lies in the legislative domain and should be resolved there. A court should not find such authority in an agency unless the statute under consideration confers it expressly or by unavoidable implication. In this case, obviously the statute does not expressly confer the power sought to be exercised by PERC. And, in our judgment, the statutory language does not justify a judicial determination that power of such magnitude resides there by implication.
All that we have said above in reviewing the history of the Act and the milieu in which it was adopted makes it plain that if the Legislature desired or intended to grant authority of the scope claimed, it could have done so without difficulty. Ample statutory precedents were available on the national scene as well as in the states referred to above. As a consequence the best we can say about the statute is that our analysis has left us with grave doubt as to whether the Legislature granted or intended to grant the authority in issue in this case. In situations where such an important public policy matter is involved the proper course for the judicial branch of the government to follow is to deny the power and to assume that if the legislative branch desires PERC to have the authority, it will bestow it in unmistakable terms. [at 598-599; footnote omitted]
It was not until four years after this decision that the authority found to be lacking was provided.
In arriving at its result the court has not given sufficient heed to the cautious and experimental manner in which the Legislature appears to be approaching the delicate and novel problems with which it is confronted in this evolving sector of labor relations. While I agree that without the power of subpoena the Commission is unable to discharge its function with the greatest effectiveness, this is a legislative consideration which the court is not free to weigh. There may have been other considerations in the mind of the Legislature which it decided to accord greater weight. The fact is that the agency will still be able to adjudicate the charges placed before it based upon the evidence available, without the use of compulsory process. The power of subpoena is hardly necessary to carry out the manifest legislative intent. As the *66 Supreme Court noted in Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra 56 N.J. at 591, the emphasis of the act has been upon "voluntary settlement and mediation." How gradual a departure from that policy was intended by the 1974 amendment cannot be known except by the language of the statute. Moreover, in the give and take of negotiation among the legislators it could very well be that the decision to omit the subpoena power was intentionally arrived at as a condition to support for passage or for the purpose of deferring this decision pending further experience under the act. In my judgment we are obliged to respect and make full allowance for these possible factors which are so commonly a part of the lawmaking process.
Signs that this omission was intentional are too clear to be disregarded under recognized standards of statutory construction. At the time of the 1974 amendment the Legislature had before it the previously enacted N.J.S.A. 34:13A-6(e), which expressly provided the power of subpoena. We must therefore conclude that when the Legislature chose to create this power it knew how to do so in plain and unmistakable terms. It also had for its guidance comparable legislation in the federal domain under the National Labor-Management Relations Act, 29 U.S.C.A. § 161(1), which expressly grants the power in federal unfair labor practice cases. See, Burlington Evergreen Pk. Mental Hosp. v. Cooper, supra at 594-595. It is inconceivable that the lawmakers intended the subpoena power as a matter of implication when it could so easily have been expressly provided.
The subpoena power was provided in § 6(e) only for "the purposes of this section." There is no legal basis upon which to read this provision into the later enacted § 5.4, and despite the fact that there may be sound reasons favoring the power of compulsory process in unfair labor practice cases, it should not be brought into existence as an invention of the court. The case is one involving the sensitive relations between coordinate branches of government and calls upon this court to act with due restraint. *67 A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. [Watt v. Franklin Mayor and Council, 21 N.J. 274, 277 (1956)]
To my mind the proper course for the court to follow is to deny the authority to issue subpoenas and "to assume that if the legislative branch desires PERC to have the authority, it will bestow it in unmistakable terms." Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra, 56 N.J. at 599.
I would reverse.
NOTES
[1] N.J.S.A. 34:13A-5.4(a) (6) prohibits employers, their representatives or agents from: "Refusing to reduce a negotiated agreement to writing and to sign such agreement."
[2] An associate with the firm of Gerald L. Dorf, P.A., who participated in the negotiations on behalf of the Board.
[3] As in the case of the union counter-proposals, the hearing examiner proposes an in camera preliminary inspection of the notes for the purpose of assuring that only nonconfidential negotiation material is submitted for the union's inspection.
[4] Here, too, the hearing examiner proposes an in camera preliminary inspection for the purpose of assuring that only nonprivileged matter is produced for the charging party's inspection.