175 N.J. Super. 294 (1980)
418 A.2d 295
JAMES H. HAYES, PLAINTIFF,
v.
PAUL GULLI, CHIEF PERSONNEL OFFICER, NEW LISBON STATE SCHOOL, DEFENDANT.
Superior Court of New Jersey, Chancery Division Mercer County.
Decided June 24, 1980.
*297 Jane Hart Marter, for plaintiff (James Logan, Jr., attorney).
J. Michael Blake, Deputy Attorney General, for defendant (John J. Degnan, Attorney General, attorneys).
DREIER, J.S.C.
James H. Hayes has been employed at New Lisbon School for approximately 13 years. On April 21, 1979, he was demoted from his position as Assistant Supervisor of Residential Living as a result of charges of neglect of duty and inefficiency. Hayes allegedly failed to follow established administrative procedures when an elderly resident of the school was reported missing from his cottage during a blizzard.
Hayes appealed his demotion and hearings were scheduled before an administrative law judge of the Office of Administrative Law (hereafter the "O.A.L."). At plaintiff's request a subpoena duces tecum was issued by the O.A.L. for the second scheduled hearing and served upon Paul Gulli, Chief Personnel Officer of New Lisbon State School (defendant). This subpoena required that defendant appear and produce school records pertaining to one of the residents of the school. Allegedly, these records include certain reports which are relevant to the incident in question, but are unrelated to that resident's treatment. Defendant has refused to comply.
On May 12, 1980 the administrative law judge, after considering the various objections to the subpoena, confirmed its scope and effect as valid and ordered defendant to comply; defendant, however, continues to decline to produce the records.
*298 On May 21, 1980 an order to show cause was signed by this court requiring defendant to show cause why the subpoena should not be enforced.[1]

I
The threshold question is whether the O.A.L., or its administrative law judges, has any power to issue a subpoena.[2] Such power may be either derivative, i.e., flowing from the statutory authorization to the Civil Service Commission (the generating agency), so as to be restricted by the statutory procedures pertaining thereto (see N.J.S.A. 11:1-12, 13), or, as urged by plaintiff, independent, i.e., a necessarily implied power inherent in the independent quasi-judicial function of an administrative law judge, despite the absence of an express grant in N.J.S.A. 52:14F-1 et seq.[3]
The legislative purpose in establishing the O.A.L. was recognized by Justice Handler in Hackensack v. Winner, 82 N.J. 1 (1980):
The act creates an independent Office of Administrative Law and provides for the assignment of independent hearing officers, denominated "administrative law judges," to hear and make recommended determinations in contested administrative agency cases. N.J.S.A. 52:14F-5, -6, -8. The salutary purposes of the statute "is to improve the quality of justice with respect to administrative hearings ... [,] to eliminate conflict of interests for hearing officers, promote due process, expedite the just conclusion of contested cases and generally improve the quality of administrative justice." Statement of Purpose, L. 1978, *299 c. 67. The administrative law judges will be independent of the administrative agency whose jurisdiction is involved. [at 36-37]
Towards this clearly enunciated goal of improvement of administrative justice, the Legislature has given the Director of the O.A.L. the power to:
........
e. Develop uniform standards, rules of evidence, and procedures, including but not limited to standards for determining whether a summary or plenary hearing should be held to regulate the conduct of contested causes and the rendering of administrative adjudications;
f. Promulgate and enforce such rules for the prompt implementation and coordinated administration of the Administrative Procedure Act P.L. 1968, C. 410 (C. 52:14B-1 et seq.) as may be required or appropriate;
g. Administer and supervise the procedures relating to the conduct of contested case, and the making of administrative adjudications as defined by Section 2 of P.L. 1968, C. 410 (C.52:14B-2); ... [N.J.S.A. 52:14F-5 e, f, g]
The Legislature thus intended the O.A.L. to provide a new system of administrative adjudication, promoting justice through uniformity and independence.
As presented to this court, there is no dispute as to whether the O.A.L. can issue subpoenas under the statutory grant to the agency involved in the contested case before it; only the method of enforcement is contested. The Civil Service Commission is clearly granted subpoena power by N.J.S.A. 11:1-12, 13, and all parties suggest that the O.A.L. can exercise the power of the Commission.
Despite this position, the parties' dispute as to the proper method of enforcement of the subpoena requires this court to examine the source of the O.A.L.'s power, if any, to issue subpoenas. Although defendant urges that the court need not discuss this issue, the source of the power can itself determine the method of enforcement. Since the statutes involved do not expressly grant such power to the O.A.L., one view is that the O.A.L. may not exercise any independent subpoena power, but rather must follow the procedures required of the individual case-generating agencies. Here, the Civil Service Commission itself has been given the subpoena power, and no administrative delegation of that power to either administrative law judges or *300 their predecessors (hearing officers) has been shown.[4] Therefore, it could be argued that subpoenas can only originate from the Commission itself, and would be enforceable only by certification by its President to the Superior Court pursuant to N.J.S.A. 11:1-13.
Such an interpretation could significantly limit the effectiveness of the new O.A.L. by perpetuating inefficiency, nonuniformity and nonindependence. First, such restrictions would burden the generating agency with relatively mundane and undisputed requests for subpoenas. Second, the O.A.L. would be unable to maintain uniform procedures of adjudication in the face of considerable statutory variations from agency to agency as to both the substantive availability of subpoena powers and specified procedures for their issuance and enforcement. Third, the O.A.L. would be reduced to dependence upon the will of the various agencies for issuance and enforcement of the subpoenas, impairing its ability to provide fair, full and effective determinations of fact and law, particularly in those cases where the agency itself has a position to advocate. Accordingly, this court cannot accept this interpretation. The O.A.L. was created to avoid exactly such problems in the quasi-judicial process.
Plaintiff urges that this court find that the O.A.L. has the power of subpoena by virtue of its inherent powers as an independent quasi-judicial body. This alternative is apparently supported by the stated legislative purposes behind the creation of the O.A.L. and by extrapolation from the decision in Newark Bd. of Ed. v. Newark Teachers' Union, supra, note 4. There the question involved the power of the Public Employment Relations Commission (PERC) to issue subpoenas in connection with a charge of unfair labor practices. The Division of which PERC was a part was specifically authorized to issue subpoenas as to *301 some matters, but the section authorizing PERC to hear unfair practice charges did not include such authorization. The court stated:
........
Meaningful exercise of these quasi-judicial functions would indeed be thwarted if the statute were construed to deny the Commission the authority to issue subpoenas for the attendance of essential witnesses and production of relevant documents in such cases. Denial of such could not have been the intention of the Legislature. [152 N.J. Super. at 60]
N.J.S.A. 52:14B-10(c) requires that an administrative law judge's recommended findings of fact and conclusions of law must be based on a complete and fair review of all the relevant evidence. The existence of a subpoena power is a tool to accomplish such a complete adjudication and might well be necessary to meet the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, viz., a meaningful hearing appropriate to the nature of the case. Bell v. Burson, 402 U.S., 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The fact that administrative law judges usually issue only initial, as opposed to final, decisions should not affect the question of such judges' powers. An initial decision can by operation of law become the final decision in a contested case. N.J.S.A. 52:14B-10(c). Even when the head of the agency decides not to rely upon the findings of the administrative law judge, his or her ability to reach a final decision depends directly on the development of a full and fair record below. Thus, the need for the subpoena power is clear.
Unfortunately, in the case at bar there is no mention of any subpoena power in the legislation that created and empowered the O.A.L. The Legislature could have readily included such a grant in its legislation but, whether by design or mistake, it did not do so. As noted in Judge Antell's dissent in the Newark Bd. of Ed. case, quoting from R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J. Super. 155, 173 (App.Div. 1962):
"It is better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers. Railroad Comm'n of Indiana v. Grand Truck Western R. Co., 179 Ind. 255, 100 N.E. 832, 855 (1913)." [152 N.J. Super. at 64]
*302 Although the Legislature repealed "all acts and parts of acts inconsistent with any of the provisions of this amendatory and supplementary act," (N.J.S.A. 52:14F-10), none of the powers enumerated in N.J.S.A. 52:14F refers specifically to any subpoena power of the O.A.L. or the existing subpoena powers of the various agencies. Thus, the various subpoena powers and limitations are not inconsistent with those of the O.A.L. In the absence of an express grant, this court would have some difficulty generally engrafting such a power on the O.A.L., no matter how wise such a grant might appear. Certainly the O.A.L. has some inherent powers. Whether the subpoena power is among them is at least unclear. This court need not decide whether such an inherent subpoena power exists because an alternative analysis will suffice for the purposes of the case. The approach adopted balances the goals apparent in the legislation creating the O.A.L. with those embodied in the statutory schemes governing the various administrative agencies. Whether the O.A.L. has or should have any further power will be left to future cases or the Legislature.
In some administrative agencies (such as the Civil Service Commission) the subpoena power has been given to the agency itself. In others (such as the Department of Community Affairs), the Legislature has granted no such subpoena power. The O.A.L., as an independent quasi-judicial body handling contested cases on behalf of various administrative agencies, should at least be capable of handling the case in much the same way as the generating agency itself. To hold otherwise would ignore the very purposes for which the O.A.L. was created. Therefore, this court rules that where an administrative law judge is hearing a contested case for an agency, the O.A.L. assumes substantively the same power of subpoena as is held by the agency. Conversely, since the O.A.L. has been granted no express subpoena power of its own, if the agency for which the case is being heard has also been denied such power, the O.A.L. may well have none. In short, the source of the O.A.L.'s power is derived from the legislatively granted powers of the generating agency.
*303 The question remains as to whether the procedural restrictions which the Legislature has imposed upon the generating agency's subpoena power (such as issuance by the Commission as a whole) also restrict the O.A.L. The Director of the O.A.L. is given broad authority in N.J.S.A. 52:14F-5 e, f and g to develop uniform standards, rules and procedures for the conduct of contested cases. This grant mandates the conclusion that in the exercise of its substantive powers (here the subpoena power derived from the agency), the O.A.L. may promulgate its own uniform rules and procedures. The issuance of subpoenas by the O.A.L. should not be hampered by varying procedures designed for agencies of different purposes and powers.[5] See N.J.S.A. 52:14F-10.
This liberal construction permits the Director to discharge his statutory responsibilities independent of control by the various agencies. Uniformity is achieved among those cases derived from agencies with statutory subpoena power while balancing the conflicting legislative concerns that had restrained other agencies from exercising the subpoena power at all, and additionally recognizes the absence of a specific grant of such power to the O.A.L. See Hackensack Water Co. v. Ruta, 3 N.J. 139, 146-147 (1949), and Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n., 144 N.J. Super. 521, 524 (App.Div. 1976).
The subpoena in the present case was, therefore, validly issued by the O.A.L., since the Civil Service Commission itself had been given the subpoena power. N.J.S.A. 11:1-12, 13.

II
Defendant urges that even if properly issued, the O.A.L. subpoena cannot be enforced before this court. As currently construed, the concept of separation of powers clearly prohibits the O.A.L. from adjudicating and punishing contempts for failure *304 to comply with an issued subpoena. N.J.Const. (1947), Art. III, par. 1 (1947); N.J.S.A. 52:14F-1, and Wright v. Plaza Ford, 164 N.J. Super. 203 (App.Div. 1978). However, the O.A.L. may be permitted to use some nonjudicial sanction powers and procedures not involving contempt to enforce its subpoenas. General Motors Corp. v. Blair, 129 N.J. Super. 412 (App.Div. 1974).
When this action was initiated no procedure had been formally established by the O.A.L. for enforcement of such subpoenas.[6] On the refusal of the New Lisbon School to produce the records in question, the assigned administrative law judge reviewed the subpoena, the relevance of the records and defendant's claim of confidentiality. He decided the subpoena was valid and ordered defendant to comply.[7]
This court believes that this action has been properly brought, even in the absence of established formal procedures, by the litigant-plaintiff ex rel., the O.A.L., pursuant to R. 1:9-6(b). Administrative agencies have been able to invoke the equitable powers of the Superior Court to assist them in fulfilling their statutory functions. Pfaus v. Feder, 88 N.J. Super. 468 (Ch.Div. 1965). There can be little doubt that such powers are also available to aid litigants in the administrative forum, and thus to aid the jurisdiction of the O.A.L. R. 1:9-6(b) provides one procedure for such assistance.
The procedural steps set forth in N.J.S.A. 11:1-13, requiring the President of the Civil Service Commission to certify its subpoenas to the Superior Court for enforcement, should not *305 restrict the enforcement of an O.A.L. subpoena, for the reasons noted in Part I of this opinion. The independent issuance of the subpoena would be meaningless if its enforcement was subject to the generating agency's discretion. Therefore N.J.S.A. 11:1-13 does not restrict the O.A.L. The matter is properly before this court.

III
As to the nature of the hearing to be held by this court in enforcing the O.A.L. subpoena, both sides have suggested (for different reasons) that the scope of this review should be limited. Obviously, this is not an appellate review pursuant to R. 2:2-4. However, this court may examine the technical sufficiency and substantive validity of the O.A.L.'s subpoena under R. 1:9-6(b), without regard to whether or not the subpoenaed party has sought appellate review thereof. In re Vornado, Inc., 159 N.J. Super. 32 (App.Div. 1978), certif. den. 77 N.J. 489 (1978). This court is not restricted to an examination of the powers of the O.A.L. to issue the subpoena and subsequent protective order, and therefore the merits of the claim of confidentiality raised by defendant must be examined in this enforcement proceeding.

IV
The defendant asserts that state and federal confidentiality statutes and regulations restrict the availability of the records sought by the subpoena duces tecum here involved. See N.J.S.A. 30:4-24.3, N.J.S.A. 30:6D-4 f, N.J.A.C. 10:49-1.22, 42 U.S.C.A. § 1396a(a)(7), 42 C.F.R. § 431.300 and 42 C.F.R. § 442.502.
The confidentiality of records for residents of New Jersey state schools for the mentally retarded is governed by N.J.S.A. 30:4-24.3, which provides that:
All certificates, applications, records and reports made pursuant to the provisions of this Title and directly or indirectly identifying any individual presently or formerly receiving services in a non-correctional institution under this Title *306 ... shall be kept confidential and shall not be disclosed by any person, except insofar as:
........
(3) a court may direct, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest. [Emphasis supplied].
See, also, N.J.S.A. 30:6D-4 f. The confidentiality of such records has been carefully protected by the courts in the past. See In re Application of J.C.G., 144 N.J. Super. 579 (Cty.Ct. 1976), and Carroll v. Cobb, 139 N.J. Super. 439 (App.Div. 1976).
In this case the assigned administrative law judge purported to act under N.J.S.A. 30:4-24.3(3) by making the required findings. He ordered the school to comply with the subpoena and issued a protective order against disclosure of the records to anyone outside the case.
Defendant asserts, apart from the federal questions, that the administrative law judge had no power to issue an order under N.J.S.A. 30:4-24.3(3) because he is not a "court" within the meaning of the statute. Plaintiff argues, in accord with the view expressed by the administrative law judge himself, that the word "court" has to be viewed in a broad sense keeping in mind the nature of the proceeding and presiding official. The judge expressed the view that the very nature of the quasi-judicial process he controlled (the hearing procedures, the contested cases themselves, the rights being adjudicated and the appellate process thereafter) were sufficiently equivalent to the nature of the processes before the trial divisions of the Superior Court as to meet the intended meaning of the word "court."
The O.A.L. is not, however, a "court" in the traditional sense of a body assigned to the judicial branch of government. See N.J.S.A. 52:14F-1; Wright v. Plaza Ford, supra; and cf. N.J.S.A. 2A:3A-1 (establishing the Tax Court as an inferior court in the judicial branch). Additionally, the word "court" is defined in N.J.S.A. 30:4-23:

*307 "Court" means the County Court of any county in this State, or the Juvenile and Domestic Relations Court of any county.[8]
See, also, Hackensack v. Winner, supra, 82 N.J., at 28.
If effect is given to the statute's definition, an action seeking to override the statutory confidentiality of records such as those here involved can be brought only in the enumerated courts. Nothing in the legislation creating the O.A.L. and its administrative law judges can be read as changing this definition to include the O.A.L. as a court for this purpose. The policy concerns that led to the creation of the confidentiality statute continue to exist after the O.A.L. was created and, absent clear legislative intent to the contrary, the O.A.L.'s power of subpoena must yield to the protection provided by the statute.
Therefore, although the O.A.L. could properly subpoena the records in question, on proper invocation of the statutory protection afforded by N.J.S.A. 30:4-24.3, the O.A.L. was without power itself to compel disclosure of the records insofar as they fall within an area of statutory confidentiality.

V
This court has not seen the records in question and their relevance to plaintiff's administrative case has not been sharply defined. Similarly, as a result of the positions adopted by the parties, the applicability of the various federal statutes and regulations cited under Part IV above is unclear. Other federal statutes and regulations have been cited by the parties in passing, which, if applicable, would further restrict the availability of the records (although expressly permitting disclosure by court order under limited circumstances). See 21 U.S.C.A. § 1175, 42 U.S.C.A. § 4582, and 42 C.F.R. § 2.1 et seq. In the absence of an examination of such records, arguments as to their relevance and specific claims of confidentiality, this court cannot reach a conclusion as to the availability of the records.
*308 It may, for example, be necessary to hold an in camera examination of the records in question in order to determine if they are in fact records protected under the various statutes. See Connecticut v. White, 169 Conn. 223, 363 A.2d 143 (Sup.Ct. Err. 1975), cert. den. 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). If the records being sought are merely investigative reports of similar incidents believed to have been misfiled in this resident's file, such a report might not be protected. A simple minimally intrusive check of the file (as opposed to the patient's medical records) might be sufficient. Alternatively, the information sought to be disclosed may directly concern the resident so as to trigger the safeguards required by the statutes. Even if such records would normally be confidential, they may, under some circumstances, still be subject to disclosure on other principles. N.J.S.A. 30:4-24.3. The court must therefore hold a hearing to examine these issues. Cf. State v. Boiardo [1], 172 N.J. Super. 528 (1980), reiterated in State v. Boiardo [II], 83 N.J. 350 (1980) (requiring threshold showings of legitimate need where a criminal defendant sought records against a claim of reporter's privilege under N.J.S.A. 2A:84A-21.1 et seq. before even an in camera inspection could be held).
Insofar as a claim of confidentiality is raised under N.J.S.A. 30:4-24.3 at an administrative hearing, an action would be cognizable in the Superior Court for an order pursuant to the statute directing disclosure of the records. Naturally, the court must make the requisite statutory findings before any order of disclosure could issue. An action to enforce an otherwise valid subpoena under R. 1:9-6 is sufficient to bring the issues before the court for purposes of that statute. Although plaintiff's complaint herein does not specifically request such a proceeding, this court will consider such as appropriate alternative relief. Accordingly, a date shall be set for arguments under N.J.S.A. 30:4-24.3 as well as for consideration of the other applicable state or federal statutes and regulations.

VI
The statutory requirements of confidential handling of such records generate substantive rights in the resident *309 himself. See, e.g., N.J.S.A. 30:4-24.2(b) and (e)(1). Since the subpoena herein seeks the records of a named resident who is not a party to this action, that resident's interests should be separately protected. Therefore, if the resident does not already have a guardian, this court will appoint a guardian ad litem to appear on his behalf in this action. See R. 4:26-2(b)(4), and In re Application of J.C.G., 144 N.J. Super. 579 (Cty.Ct. 1976).
NOTES
[1] Plaintiff originally sought enforcement in Burlington County and then in the Mercer County, Law Division. The assignment judge referred the matter to the Chancery Division.
[2] The Director and Chief Administrative Law Judge of the O.A.L. accepted the invitation of this court to submit an amicus letter memorandum of law on these issues, which memorandum has been received and considered, without objection of the parties.
[3] N.J.S.A. 52:14F-5 k insures that the Director of Administrative Law has access to agency information so he can supervise the proper promulgation of rules pursuant to each agency's quasi-legislative powers. This case involves a quasi-judicial function of the O.A.L., and no provision in the statute expressly grants or withholds a similar access to agency records in such contested cases.
[4] This court expresses no opinion as to whether such a power could have been delegated by the Civil Service Commission prior to the creation of the O.A.L. But cf. e.g., N.J.S.A. 34:13A-6(7) (permitting the Public Employment Relations Commission to delegate its powers to individual commissioners or officers), and Newark Bd. of Ed. v. Newark Teacher's Union, 152 N.J. Super. 51 (App.Div. 1977).
[5] This conclusion, however, leaves intact all procedural restrictions on the agency itself when it chooses to act on its own in either its quasi-judicial quasi-legislative or investigative roles.
[6] On July 1, 1980 proposed N.J.S.A. 1:1-8.5(c) will probably become effective. See 12 N.J.R. 240 and N.J.R (1980). This rule provides: "(c) Any subpoena may be enforced by an action in the Superior Court in aid of the jurisdiction of the Office of Administrative Law and the agency which generated the contested case."
[7] Interestingly, on June 10, 1980 the Civil Service Commission ruled, at defendant's request, that it had jurisdiction over the enforcement of the subpoena by the O.A.L. pursuant to N.J.S.A. 11:1-13. This court expresses no opinion on the issues of either the accuracy of that ruling and the possible existence of concurrent jurisdiction between the Commission and the Superior Court.
[8] The powers of the County Court were transferred by virtue of the recent constitutional consolidation of the courts into the Superior Court. See N.J. Const. (1947), Art XI, § VI.