203 N.J. Super. 351 (1985)
496 A.2d 1140
STATE OF NEW JERSEY, PLAINTIFF,
v.
EDWARD F. FREEMAN, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided April 3, 1985.
*352 William F. Lamb, Middlesex Cty. First Asst. Pros., for plaintiff.
Jerome J. Convery, for defendant.
*353 HOFFMAN, J.S.C.
Defendant was indicted for the murder of his wife, Sandra Freeman, in violation of N.J.S.A. 2C:11-3. The autopsy report indicates that she died as a result of sodium cyanide poisoning. Prior to trial, the State has moved for an order granting the State an interview with the couple's three minor children whose ages are now ten (10), seven (7), and three (3). Although the children were not subpoenaed to testify before the Grand Jury, the State has made efforts to interview them. Acting as the children's guardian, defendant has refused permission for such interviews.
The facts are unique but uncomplicated. Sandra Freeman died on the evening of the day on which Memorial Day was observed, Monday, May 28, 1984. Since it was a holiday, the Freemans spent the day together as a family. Sometime during the course of the day the Freemans purchased donuts from a local bakery and at the day's end they brought Carvel ice cream home. Upon returning home, Mrs. Freeman bathed the children and put the two older ones to bed. Mrs. Freeman then consumed the ice cream and donuts while she rocked the baby to sleep on her lap. While doing this she felt ill and went to the bathroom where she vomited and passed out. The rescue squad was summoned and Mrs. Freeman was taken to the hospital where she expired shortly thereafter. The State alleges that Mr. Freeman laced the donut and/or the ice cream with the lethal toxin, causing his wife's death.
The State believes that the Freeman children have relevant information because the family was together the entire last day of Sandra Freeman's life. Additionally, the State avers that the children were not called before the Grand Jury for humanitarian reasons since the proceedings were held in close proximity to the date of their mother's death.
Defendant contends that such interviews would be detrimental to his children and as their guardian he has the right to refuse the requested permission.
*354 Although the children are potential witnesses, the significance of their testimony is unknown. The State wants to ascertain whether they have any personal knowledge of facts leading to their mother's death. Regarding minor children, a parent or guardian normally makes the decision on whether or not to permit them to be interviewed. A problem arises when a parent, who is also a criminal defendant, makes a decision affecting his minor children which may have a substantial impact on the State's case against him. "[W]hen it appears that the child's best interests are likely to be subordinate to the interests of the parents or [the State's], independent representation [for the child] is required." Doe v. DYFS, 165 N.J. Super. 392, 408 (App.Div. 1979).
Courts must be able to adapt when unique factual situations are presented. While the Freeman children are not victims in the classic sense, they necessarily must be suffering from their mother's death and their father's prosecution. The children's interests must be protected; yet, the State has an interest in discovering any relevant information held by them.
As a parent, defendant has a right to safeguard the needs of his children. However, if his parental rights conflict with the States' interests, the court has a paramount obligation in protecting the rights of all concerned. It has always been within the inherent power of the court to take the necessary action to protect children. This is so even on the courts own motion. See Bauer v. Griffin, 104 N.J. Super. 530 (Law Div. 1969).
The most advantageous method of balancing the various interests of all concerned is for the courts to appoint a guardian ad litem for the children. The court's use of such an appointment has normally been limited to non-criminal matters; however where the facts so warrant, there is no good reason why this protective device should not be extended for use in criminal cases. "Upon appointment, the guardian ad litem, ... stands in the eyes of the law as a shield against all the world for the *355 protection of the interests of the ward." Matter of J.C.G., 144 N.J. Super. 579, 586 (Hudson Cty.Ct. 1976).
This court appoints William Hamilton, an experienced New Brunswick attorney, as the guardian ad litem. Mr. Hamilton has distinguished himself as a prosecutor and as a defense counsellor. Additionally, he has the sensitivity required to deal with children of tender years.
It will be the guardian ad litem's function to speak with the children, their teachers, physicians and other persons they are involved with so as to be better able to advise the court whether or not an interview by the State would be in the children's best interest.
Furthermore, if the guardian ad litem determines that such interviews will not have an adverse impact on the children, or on any one of them, he will suggest to the court the appropriate place and conditions under which such an interview should take place. It is not the guardian ad litem's duty to act as a court appointed investigator relative to the merits of the case against defendant and he is not to make his own determination as to the importance of the children's knowledge of relevant facts.
The resolution of the State's application shall await the court's receipt of the guardian ad litem's report.