## IN THE MATTER OF THE APPEAL OF CERTAIN SECTIONS OF THE UNIFORM ADMINISTRATIVE PROCEDURE RULES.

Argued November 4, 1981—Decided June 29, 1982.

*Vincent J. Dotoli* argued the cause for appellant, Burlington Environmental Management Services, Inc. (*Vincent J. Dotoli*, attorney; *Robert D. Ford*, on the brief).

*Morris Schnitzer* argued the cause for respondent, Office of Administrative Law.

*Erminie L. Conley*, Assistant Attorney General, argued the cause for *amici curiae* Attorney General and State Executive Agencies (*James R. Zazzali*, Attorney General of New Jersey, attorney).

*William R. Holzapfel, Francis R. Perkins* and *Albert N. Stender* submitted a brief on behalf of *amicus curiae* Holzapfel, Perkins & Kelly, A Professional Corporation (*Holzapfel, Perkins & Kelly*, attorneys; *Albert N. Stender*, of counsel and on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This case raises important questions concerning the relationship between State administrative agencies and the Office of Administrative Law (OAL) in the conduct and adjudication of contested cases. These questions are raised in the context of a challenge to a number of rules promulgated by the OAL to govern the manner in which administrative hearings are conducted.

The Office of Administrative Law adopted these regulations pursuant to its statutory authority to promulgate rules "to regulate the conduct of contested cases and the rendering of administrative adjudications." *N.J.S.A.* 52:14F–5(e). See also

*N.J.S.A.* 52:14F–5(f). On August 20, 1980, appellant Burlington Environmental Management Services, Inc. filed the present action, challenging the validity of approximately twenty different provisions in the rules on grounds that they are either *ultra vires* or impermissibly vague.[1] We directly certified the case. 87 *N.J.* 370 (1981).

Since the filing of this action, several of the challenged rules have been modified in a manner that addresses appellant's concerns, thereby obviating the need for further review.[2] The rules still subject to review include: *N.J.A.C.* 1:1–1.5 (The nature of a contested case); –1.6 (The characteristics of contested cases); –1.7 (The characteristics of matters which are not contested cases); –3.2(c) (Expedition . . . special time require-

---

[1]Initially issued on September 6, 1979 (see 11 *N.J.R.* 479), the rules, entitled the "New Jersey Uniform Administrative Procedure Rules, 1980," were intended to "govern the conduct of all contested cases in the Executive Branch of the State Government." *N.J.A.C.* 1:1–1.1. After receiving public comments and making modifications, the OAL reissued the rules, 12 *N.J.R.* 234 (May 8, 1980), which were finally adopted on June 19, 1980. 12 *N.J.R.* 362. See *N.J.A.C.* 1:1–1.1 to –16.4.

In its original notice of appeal, appellant challenged the following rules: *N.J.A.C.* 1:1–1.5, –1.6, –1.7, –3.1(a), –3.1(b), –3.2(c), –3.3(b), –3.5(a), –3.5(b), –3.5(c), –9.6, –9.7, –11.2(c), –11.3, –11.6, –12.4(a), –12.6, –13.1, –13.2, –13.3, –13.4, –16.4. However, appellant subsequently withdrew its challenges to *N.J.A.C.* 1:1–3.1(a), –3.1(b), and –3.3(b).

[2]On February 17, 1981, amendments were adopted to the following rules: *N.J.A.C.* 1:1–9.7, –11.2, –11.3, –12.4, –14.3 and 15.2 See 13 *N.J.R.* 114. These amendments removed almost all of the provisions that specifically identified certain matters as procedural and thus nonreviewable by the head of an agency. According to the commentary accompanying these changes: "[T]he amendment eliminates the designation of specific areas as procedural and therefore, by definition, not subject to agency head review. In light of the amendment, these designations are superfluous and may be the source of confusion"). 13 *N.J.R.* 3 (Jan. 8, 1981). We note, however, that no change was made to *N.J.A.C.* 1:1–12.6(d), which provides that rulings on participation motions are "procedural and not subject to review by an agency head." See *infra* at 101. Further amendments were proposed for *N.J.A.C.* 1:1–3.5(c) on sanctions, 13 *N.J.R.* 254 (May 7, 1981), and *N.J.A.C.* 1:1–9.7 on agency review, 13 *N.J.R.* 181 (April 9, 1981). However, neither of those proposals has thus far been adopted.

ments); −3.5 (Sanctions); −9.6 (Motions for emergency relief); −9.7 (Orders on motion; review by agency head; when permitted; when not permitted); −11.6 (Sanctions for discovery abuses); −12.6 (Participation; standards for participation; no agency review); −13.1 to −13.4 (Summary decision); and −16.4 (Exceptions).

The Attorney General declined to provide representation for the OAL in this case but was granted leave to appear as *amicus curiae.* The Attorney General opposes only those rules limiting agency review of ALJ procedural rulings, *N.J.A.C.* 1:1–9.7(e) and (f).

In addressing appellant's broad attack on these rules, we must first consider the guidelines appropriate for determining the validity of rules promulgated by the OAL. This analysis entails an examination of the general responsibilities of administrative agencies in administrative regulation, the use of administrative adjudications to accomplish regulatory aims, and the statutory authority of the OAL in conducting administrative hearings in contested cases. We must then consider the application of these guidelines to the particular rules that are the subject of this appeal. We will direct our attention initially to the rules most sharply attacked by both the appellant and the Attorney General, namely, *N.J.A.C.* 1:1–9.7(e) and (f), which bar agency review of all ALJ orders classified as "procedural." We will then deal with the validity of the remaining rules challenged by appellant.

I

Our first task is to identify and define the relevant principles to be applied in determining the validity of rules promulgated by the OAL. These principles emerge from an understanding of the purpose and background of the legislation that established this unique government office.

Prior to 1978, most contested cases before State agencies were initially heard by hearing examiners, many of whom were employees of the very agencies responsible for deciding the

controversies. The use of agency employees to conduct hearings and determine the evidential record in contested cases involving claims against the agency fostered an institutional bias in favor of the agency that undermined the fairness and impartiality of administrative adjudications. See *N.J. Civil Service Ass'n v. State of New Jersey*, 88 *N.J.* 605, 609 (1982); *Unemployed-Employed Council of N. J. v. Horn*, 85 *N.J.* 646, 650 (1981); *Mazza v. Cavicchia*, 15 *N.J.* 498, 536 (1954) (Jacobs, J., dissenting).

In response to these problems, the Legislature created the Office of Administrative Law by amending the Administrative Procedure Act in 1978. *N.J.S.A.* 52:14F–1 *et seq.* The signal improvement made by this change has been the replacement of former agency examiners with a corps of independent hearing officers known as "administrative law judges" (ALJs). *N.J.S.A.* 52:14F–3, –4, –5. Administrative law judges now conduct the hearings and recommend the factual findings and determinations necessary for the agency head to decide contested cases.

The primary reason for establishing the Office of Administrative Law was "to bring impartiality and objectivity to agency hearings and ultimately to achieve higher levels of fairness in administrative adjudications." *Horn*, 85 *N.J.* at 650, quoted in *N. J. Civil Service*, 88 *N.J.* at 609. Through the OAL, the Legislature intended to provide "a new system of administrative adjudication, promoting justice through uniformity and independence." *Hayes v. Gulli*, 175 *N.J.Super.* 294, 299 (Ch.Div. 1980). See *Horn*, 85 *N.J.* at 649–50; *City of Hackensack v. Winner*, 82 *N.J.* 1, 36–37 (1980); *In re Orange Savings Bank*, 172 *N.J.Super.* 275, 280 (App.Div.1980), appeal dismissed, 84 *N.J.* 433 (1980). See generally State Government, Federal and Interstate Relations and Veteran Affairs Committee Statement to Senate No.–766–*L.*1978, *c.* 67; Sponsors' Statement to Senate No. 766 (Senators Yates and Weiss); Press Release from the Governor's Office (July 6, 1978). See also Kestin, "Reform of the Administrative Process," 92 *N.J.Lawyer* 35 (1980); Aronsohn, "Unique Remedy for Traditional Problems," 92 *N.J.Lawyer* 38 (1980). Thus, the legislative goal in creating this new governmental

office was to promote uniformity, efficiency, consistency, fairness, competence, and, most importantly, independence in the conduct of administrative hearings before State agencies.

While the Legislature established the OAL to improve the overall quality of administrative adjudication, it never intended to alter the basic regulatory authority of the various State agencies. Administrative adjudication continues to be the agency's responsibility, although it is still usually effectuated through a bifurcated process in which the hearing and decisional phases are handled separately. See *Horn*, 85 *N.J.* at 650, 655. Having replaced the former hearing examiners, administrative law judges now perform the functions previously assumed by such examiners in administrative adjudications. Hence, the ALJ primarily conducts hearings only in contested cases. *N.J. S.A.* 52:14F–6. See Committee Statement, *supra* (ALJs have "the sole function of conducting administrative hearings"). The agency head retains the exclusive right to decide these cases. The Administrative Procedure Act gives the agency head the power to "adopt, reject or modify the recommended report and decision [of the administrative law judge]."[3] *N.J.S.A.* 52:14B–10(c). The sponsors of the OAL Act emphasized that: "As under existing law, ... the head of an agency will himself exercise the ultimate options of adopting, rejecting or modifying" the recommendation of an administrative law judge. Sponsors' Statement, *supra*. Moreover, the OAL Act specifically provides that: "Nothing in this amendatory and supplementary act shall be construed to deprive the head of any agency of the authority to determine whether a case is contested or to adopt, reject or modify the findings of fact and conclusions of law of any administrative law judge." *N.J.S.A.* 52:14F–7.

The reservation of decisional authority in administrative agencies was purposeful on the Legislature's part. Its significance is

---

[3] If the agency head fails to act within 45 days, the administrative law judge's ruling becomes the final decision in the case. *N.J.S.A.* 52:14B–10, *N.J.A.C.* 1:1–16.5.

related to the fact that administrative adjudication is an integral aspect of agency regulation generally. Administrative agencies are empowered to effectuate their regulatory responsibilities through either rulemaking or adjudication. See *Texter v. Department of Human Services*, 88 *N.J.* 376, 383–85 (1982); *Bally Mfg. Corp. v. N.J. Casino Control Comm'n*, 85 *N.J.* 325, 335–41 (1981) (Handler, J., concurring). See generally Shapiro, "The Choice of Rulemaking or Adjudication in the Development of Administrative Policy," 78 *Harv.L.Rev.* 921, 923 (1965). Administrative agencies necessarily possess great flexibility and discretion in selecting the form of proceeding best suited to achieving their regulatory aims. *Texter*, 88 *N.J.* at 383; *Bally*, 85 *N.J.* at 338–39. As the Supreme Court has explained:

> The function of filling in the interstices of [an enabling act] should be performed, as much as possible, through th[e] quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise. * * * Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. [*Securities and Exchange Comm'n v. Chenery Corp.*, 332 *U.S.* 194, 201–202, 67 *S.Ct.* 1575, 1580, 91 *L.Ed.* 1995, 2002 (1947)]

See also *American Airlines, Inc. v. Civil Aeronautics Board*, 359 *F.2d* 624, 630 n.16 (D.C.Cir.1966) (Leventhal, J.).

The regulatory power exercised by administrative agencies has legislative and executive as well as judicial attributes. When it takes the form of adjudication in contested cases, it is characterized as "quasi-judicial." See, *e.g.*, *Morgan v. United States (Morgan II)*, 304 *U.S.* 1, 22, 58 *S.Ct.* 773, 778, 82 *L.Ed.2d* 1129, 1134 (1937); *Mazza*, 15 *N.J.* at 524. See also 2 *Davis, Administrative Law* § 10:5 at 322–23 (2d ed. 1979); 1 *Davis, Administrative Law*, § 2.4 at 70–72, § 2.5 at 72–75 (2d ed. 1978). However, administrative agencies are not judicial tribunals. An agency, even in its adjudicatory role, "is not simply a neutral forum whose function is solely to decide the controversy presented to it." *Hackensack v. Winner*, 82 *N.J.* at 28. Rather,

administrative agencies are part of the executive branch of government, charged under the State constitution with the responsibility of faithfully executing the laws. *N.J.Const.* (1947), Art. 5, § 1, ¶ 11. Agencies are specially created by the Legislature to administer laws in accordance with the statutory duties that have been selectively delegated to them. See 1 *Davis, Administrative Law, supra*, § 1.2 at 9; Sewall, "Administrative Jurisdiction and Authority," 6 *Ind.L.Rev.* 446, 449–450 (1973); Jacobs, "Administrative Agencies, Their Status, and Powers," II *Proceedings of Const.Conv. of 1947*, 1431, 1433 (1951). Thus, "the adjudicative functions of administrative agencies are actually an aspect of their regulatory powers and, in essence, do not embrace or constitute an exercise of judicial authority." *Hackensack v. Winner*, 82 *N.J.* at 29. See *Horn*, 85 *N.J.* at 655–57; *Trap Rock Industries, Inc. v. Sagner*, 133 *N.J.Super.* 99, 109 (App.Div.1975).

Administrative adjudications in contested cases determine the legal rights of specific individuals or a limited group of individuals. *N.J.A.C.* 1:1–6(a)(iii). See *Texter*, 88 *N.J.* at 384. See generally Shapiro, *supra*, 78 *Harv.L.Rev.* at 924–30. Nevertheless, administrative agencies may and do fulfill their regulatory responsibilities through the adjudication of individual disputes. See, *e.g., Chenery*, 332 *U.S.* at 202–203, 67 *S.Ct.* at 1580, 91 *L.Ed.* at 2002; *American Airlines*, 359 *F.*2d at 630 n.16; *Horn*, 85 *N.J.* at 655–58; *Hackensack v. Winner*, 82 *N.J.* at 29; *Bally*, 85 *N.J.* at 340–43; *In re Suspension of Heller*, 73 *N.J.* 292, 304–305 (1977); *Trap Rock Industries*, 133 *N.J.Super.* at 109; *Data Access Systems, Inc. v. State of New Jersey*, 117 *N.J.Super.* 95, 101–102 (App.Div.1971), rev'd on other grounds, 63 *N.J.* 158 (1973). See generally Shapiro, *supra*, 78 *Harv.L.Rev.* 921. In the context of public administration, adjudication is regulation. In effect, an agency engages in *ad hoc* rulemaking everytime it decides a contested case. The agency can use the adjudicative process to set certain policies, to define the contours of its regulatory jurisdiction, to give specific content to general regulations, and to handle specialized problems that arise. Thus, the

agency's decisional authority over contested cases is directly and integrally related to its regulatory function.

In creating an independent Office of Administrative Law, the Legislature intended no alteration of the regulatory authority or basic decisional powers of administrative agencies. The "independence" of which we speak when describing the OAL is directed to that office's ability to conduct administrative hearings in order to make recommended factual findings and determinations in contested cases. Administrative law judges have no independent decisional authority. Any attempt to exercise such authority would constitute a serious encroachment upon an agency's ability to exercise its statutory jurisdiction and discharge its regulatory responsibilities. *Cf. Texter*, 88 *N.J.* at 383–86 (recognizing the expertise of administrative agencies in complicated regulatory fields). As previously noted, in the act that established the OAL, the Legislature expressly reserved to the agency heads the power to decide contested cases. *N.J.S.A.* 52:14F–7. That power is a necessary appendage of the agency's regulatory arsenal. Administrative agencies cannot be expected to cover the course of administrative regulation on one leg. They need both their rulemaking and adjudicatory powers to perform their duties properly.

The statutory role of the OAL must be assessed from this perspective. The administrative law judges have certain important responsibilities which they are to exercise with independence. They are to conduct hearings, make factual findings, and recommend decisions in contested cases for the various State agencies. *N.J.S.A.* 52:14F–5(n). They must be allowed to perform that task unimpeded by agency intrusions into the conduct of such cases. Therefore, the OAL may promulgate rules necessary to promote efficiency, uniformity and impartiality in the conduct of administrative hearings. See *N.J.S.A.* 52:14F–5(e) and (f). However, the OAL may not adopt rules that nullify or frustrate the essential decisional authority of the agency itself and thereby undermine its ultimate regulatory responsibilities. *N.J.S.A.* 52:14B–10(c); *N.J.S.A.* 52:14F–7. It is within this

framework that we must examine the validity of the rules now challenged.

## II

The primary rule attacked by both the appellant and Attorney General in this case is one that curtails agency review of the procedural orders of an administrative law judge. *N.J.A.C.* 1:1–9.7(e) provides that:

> An agency head may not review a procedural order of an administrative law judge. A procedural order is one which relates solely to the conduct or management of a contested case while it is pending before the Office of Administrative Law and which is designed to ensure the full, fair and prompt resolution of a matter.

While interlocutory appeal of an ALJ's procedural order is prohibited, "[e]xception to the judge's determination that a matter is procedural may be filed with the agency head within 10 days after receipt of the [judge's] initial decision ...."[4] *N.J.A.C.* 1:1–9.7(f). In addition, a party retains the right to raise procedural objections on appeal before the Appellate Division. *Id.*

*N.J.A.C.* 1:1–9.7(a) further provides that:

> On any substantive issue decided by motion, an order that changes the status quo at the time of hearing before the Office of Administrative Law shall by its terms, not be effective for ten days from the entry of the order. On the day such an order is entered, the judge shall forward a copy to the agency head who shall indicate in writing to the clerk, judge and all parties within the specified ten day period whether the order will be reviewed. If the order will be reviewed by the agency head, its effective date shall be stayed pending such review .... If the agency head elects not to review the order, it shall be effective on the eleventh day after its entry.

Moreover, *N.J.A.C.* 1:1–9.7(b) states:

> On any substantive issue decided by motion, an order that preserves the status quo at the time of hearing before the Office of Administrative Law shall, by its terms, be effective immediately. On the day such an order is entered, the judge shall forward a copy to all parties and the agency head who shall indicate in writing to the clerk, judge and all parties within ten days from the entry of the

---

[4]The "initial decision" to which this provision refers is not the "procedural" order but the decision rendered by the administrative law judge at the conclusion of the hearing. See *N.J.A.C.* 1:1–16.3.

order whether the order will be reviewed. Within 10 days from the entry of the order and upon notice to all other parties, the judge and the clerk, any party may file a motion with the agency head seeking relief from the order unless such a motion is prohibited by the agency's rules or regulations.

Thus, *N.J.A.C.* 1:1–9.7 allows interlocutory review by the agency head of ALJ orders on "substantive" issues. However, it bars agency review of ALJ "procedural" orders.

Both appellant and the Attorney General argue that this rule barring agency review of ALJ procedural orders is *ultra vires* and impermissibly vague. The OAL claims that it must have the right to decide procedural questions without agency interference if it is to carry out its statutory responsibility to enhance and expedite the conduct of contested cases.

What the OAL fails to appreciate here is that the essence of an administrative adjudication is not the hearing itself but the final decision. The final decision constitutes the ultimate regulatory result. Because the agency has the statutory jurisdiction to set and enforce regulatory policy, the final decision in contested cases is entrusted solely to the agency head. It would be inimical to this scheme to impose restraints on the agency head's ability to review and correct rulings affecting the conduct of proceedings before the agency. This is especially true when such supervisory measures are necessary to ensure the soundness of the final regulatory result. Since the basic responsibility for administrative adjudication reposes in the agency, the agency head has the inherent power to review any order or ruling made by an ALJ during the hearing of a contested case. The agency head can consider any ALJ ruling in conjunction with his review of the ALJ's recommended decision, which is presented to the agency head at the conclusion of the hearing for his final acceptance, rejection or modification, pursuant to *N.J.S.A.* 52:14B–10(c). Further, any valid rule governing the conduct of administrative hearings must recognize the agency head's right to decide whether a particular order affecting the conduct of such hearings should be reviewed on an interlocutory basis.

The present rule groups ALJ orders into two categories— "substantive" and "procedural." Although the rule attempts to

restrict the meaning of the term "procedural" to that which "relates solely to the conduct or management" of the case and, presumably, intends that the term "substantive" will cover everything else, the use of such terms is misleading. In this grey area, strict categorizations will inevitably prove inadequate. While the designations "substance" and "procedure" might generally suffice to convey the types of orders subject to review, we can anticipate subjects arising that will not fit neatly into these categories. As Chief Justice Weintraub observed: "[I]t is simplistic to assume that all law is divided neatly between 'substance' and 'procedure.' A rule of procedure may have an impact upon the substantive result but be no less a rule of procedure on that account." *Busik v. Levine*, 63 *N.J.* 351, 364 (1973), appeal dismissed, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973). Thus, "rational separation [between 'substance' and 'procedure'] is well-nigh impossible." Levin & Amsterdam, "Legislative Control over Judicial Rule-making: A Problem in Constitutional Revision," 107 *U.Pa.L.Rev.* 1, 14–15 (1958). See also *State v. Otis Elevator Co.*, 12 *N.J.* 1, 24 (1953) (Jacobs, J., dissenting).

As previously noted, the agency head's right to review ALJ orders on an interlocutory basis is a necessary adjunct of his ultimate power to decide the case. In this regard, it is irrelevant that the order serves a "procedural" purpose. Rather, it is the effect of an ALJ's order which is of special significance. Because the agency head must eventually decide the matter, he would be understandably concerned about ALJ orders that so influence the case at the hearing stage that they can affect the substantive posture of the proceeding and the ability of the agency to reach a proper regulatory result. It would be disruptive, if not destructive, of the agency's regulatory authority to preclude the agency from reviewing orders on an interlocutory basis merely because an ALJ characterizes them as "procedural." Therefore, we conclude that the agency has the right to review ALJ orders on an interlocutory basis to determine

whether they are reasonably likely to interfere with the decisional process or have a substantial effect upon the ultimate outcome of the proceeding.[5]

This approach makes sense to us for several reasons. First, it protects the agency head's ultimate right to decide contested

---

[5]In an analogous context, federal courts have developed what is now commonly known as the *Erie* doctrine for determining when state law applies in federal diversity actions. See *Erie Railroad Co. v. Tompkins*, 304 *U.S.* 64, 58 *S.Ct.* 817, 82 *L.Ed.* 1188 (1938). The *Erie* doctrine provides that federal courts sitting in diversity are to apply state "substantive" law and federal "procedural" law. *Hanna v. Plumer*, 380 *U.S.* 460, 465, 85 *S.Ct.* 1136, 1140, 14 *L.Ed.*2d 8, 13 (1965). 13. Initially, the federal courts used an "effects" test to decide such questions. The sole focus of the inquiry was whether the choice between state and federal law would so "significantly affect the result of a litigation" that it would effectively dictate the outcome of the case. *Guaranty Trust Co. v. York*, 326 *U.S.* 99, 109, 65 *S.Ct.* 1464, 1469, 89 *L.Ed.* 2079, 2086 (1945) (later labelled the "outcome-determinative" test). The Supreme Court subsequently expanded upon that formulation in its *Hanna* decision to include consideration of the essential purpose or character of the rule in question. Thus, the inquiry on *Erie* questions is now framed in terms of "whether application of the rule would make so important a difference to the character and result of the litigation" that it is appropriately characterized as "substantive." *Hanna*, 380 *U.S.* at 468 n.9, 85 *S.Ct.* at n.9, 14 *L.Ed.*2d at 15 n.9.

In commentary accompanying the rules now in question, it was indicated that the OAL planned to embrace the "purpose" test articulated in *Hanna* to define "procedural matters." See 13 *N.J.R.* 3 (Jan. 8, 1981). While that approach may best serve the needs of the federal system, in the context of our State's administrative practice, we find the "effects" test preferable precisely because it emphasizes the *effect* of the order on a case's outcome. The "effects" test proved unworkable for federal *Erie* questions since even slight variations between state and federal law could have an impact on the case's result in certain circumstances. Therefore, the federal courts were forced to abandon that approach. Our situation, however, presents a very different problem. We need not make a choice between two bodies of law or concern ourselves with notions of federalism or comity between two jurisdictions. Rather, we are faced with the problem of reconciling the roles of administrative law judge and agency head. Our sole concern is assuring the soundness and integrity of administrative ajudication and regulation. Given the respective duties of ALJ and agency head and the agency head's ultimate responsibility to decide the case, we find the "effects" test to be the more appropriate standard for defining the permissible scope of agency interlocutory review.

cases—a right reiterated in the OAL Act, *N.J.S.A.* 52:14F–7, and one that entails more than simply stepping in at the last minute to decide the case.

Second, contrary to the OAL's contentions, the agency head's right of interlocutory review can actually promote efficiency in administrative adjudications. It is true that interlocutory review will sometimes cause delays in the proceedings. However, the consequences of barring interlocutory review are considerable. If the agency head does reverse the ALJ's order after the hearing process has already been completed, a new hearing might be required. The parties would then have to start over again, thereby contributing to delays and inefficiency. We assume that the agency head will not needlessly engage in interlocutory review. Properly and selectively exercised, such review serves the interests of prompt and expeditious adjudication.

Third, the agency head should be even less restrained than an appellate court in exercising discretion to review issues on an interlocutory basis. In a court case, the Appellate Division may grant leave to appeal interlocutory orders if "in the interest of justice." *R.* 2:2–4. See, *e.g., Appeal of Pennsylvania Railroad Co.,* 20 *N.J.* 398 (1956). The agency head should be accorded even wider discretion in determining when to review an order on an interlocutory basis. His powers of review are related to his regulatory authority, an executive function, and, consequently, are more expansive and flexible than those of an appellate judge. The agency has the sole authority to decide each case in order to effectuate regulatory policy. The decision is not that of the ALJ, but of the agency head. Although the agency head renders his decision after the hearing is completed, he has an overriding obligation to assure the soundness and adequacy of the adjudication in its entirety. His right of interlocutory review at the hearing stage is therefore necessary to preserve and foster the integrity of the administrative process in all of its essential phases.

Fourth, the power of the agency head to review ALJ orders on an interlocutory basis is not itself totally unlimited, nor is it immune from judicial review and correction if improperly exercised. It is anticipated that the interlocutory review of ALJ orders will be exercised sparingly. In this respect, the analogy to the courts is appropriate. In general, interlocutory review by courts is rarely granted because of the strong policy against piecemeal adjudications. See *Hudson v. Hudson*, 36 *N.J.* 549 (1962); *Pennsylvania Railroad*, 20 *N.J.* 398. Considerations of efficiency and economy also have pertinency in the field of administrative law. See *Hackensack v. Winner*, 82 *N.J.* at 31–33; *Hinfey v. Matawan Reg. Bd. of Ed.*, 77 *N.J.* 514 (1978). See *infra* at 102 n.6. Our State has long favored uninterrupted proceedings at the trial level, with a single and complete review, so as to avoid the possible inconvenience, expense and delay of a fragmented adjudication. Thus, "leave is granted only in the exceptional case where, on a balance of interests, justice suggests the need for review of the interlocutory order in advance of final judgment." Sullivan, "Interlocutory Appeals," 92 *N.J.L.J.* 162 (1969). These same principles should apply to an administrative tribunal.

■ We now hold that the agency head has the authority to review any ruling in conjunction with his review of the recommended decision of an ALJ at the conclusion of the hearing in a contested case. We hold further that the agency head must be given broad discretion to decide which ALJ orders are subject to review on an interlocutory basis. As in a court case, interlocutory review may be granted only in the interest of justice or for good cause shown. In the administrative arena, good cause will exist whenever, in the sound discretion of the agency head, there is a likelihood that such an interlocutory order will have an impact upon the status of the parties, the number and nature of claims or defenses, the identity and scope of issues, the presentation of evidence, the decisional process, or the outcome of the case. Interlocutory orders of this character can influence the soundness of the adjudication and the integrity of administra-

tive regulations. In the context of public administration, the interests of justice require that such orders be subject to interlocutory review.

With respect to interlocutory review of ALJ rulings, we acknowledge the lack of specificity in the approach we are now adopting. However, we find it inappropriate and unwise to essay a more specific test in an area such as this one where individual determinations will depend largely upon the peculiar circumstances of each case. We are confident that over time, there will develop a body of administrative and judicial decisional law which will effectively define the subjects appropriate for agency interlocutory review.

We therefore conclude that *N.J.A.C.* 1:1–9.7(e) and (f), in their current form, are invalid and must be modified in conformity with this decision to allow agency review of any ALJ ruling rendered during the course of hearings in contested cases cases. Such review must be permitted at the conclusion of the hearings, as well as on an interlocutory basis.

### III

We deal next with the remaining rules that are challenged on this appeal.

One such rule deals with the participation of parties in contested cases. *N.J.A.C.* 1:1–12.6(d) provides that ALJ orders on participation motions are "procedural and not subject to review by an agency head." When read in conjunction with *N.J.A.C.* 1:1–9.7(e) and (f), the effect of this provision is to place a blanket prohibition on agency interlocutory review of any ALJ order dealing with party participation.

Such a total bar against agency head review cannot be countenanced. The rule states that "[a]ny person or entity with a significant interest in the outcome of a contested case may move for permission to participate." *N.J.A.C.* 1:1–12.6(a). In a given case, the agency head may reasonably entertain a different view from that of the administrative law judge as to who

has a significant enough interest in the case's outcome to entitle that person to participate in the proceeding.[6] There may be instances when a particular party's participation may be deemed helpful, or even vital, to the proceedings. By necessity, the right of a party to participate in a case must be determined during the hearing stage. Hence, the agency head necessarily has the authority to review ALJ participation orders and may do so on an interlocutory basis. To the extent that *N.J.A.C.* 1:1-12.6(c) precludes agency head review, it must be deemed invalid and should be modified to allow for such review.[7]

Appellant also attacks the validity of *N.J.A.C.* 1:1-9.6, which allows an administrative law judge to grant emergency relief in appropriate circumstances. The value of an adjudication may well depend upon the ability of a party to secure relief on an emergency basis. The actions of a party while the proceedings are pending may frustrate the adjudication by altering the situation in a way which makes adequate relief impossible. Hence, emergency relief serves to ensure that parties are protected from the threat of irreparable injury and that the resolution of the case will have some meaning.

---

[6]This State has long had a strong commitment to the single controversy doctrine, see *Tevis v. Tevis,* 79 *N.J.* 422, 434 (1979); *Falcone v. Middlesex County Medical Society,* 47 *N.J.* 92, 93–94 (1966); *Ajamian v. Schlanger,* 14 *N.J.* 483, 485 (1954), cert. den., 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954), which is generally applicable in the field of administrative law. See, e.g., *City of Hackensack v. Winner,* 82 *N.J.* 1 (1980); *Hinfey v. Matawan Regional Board of Education,* 77 *N.J.* 514 (1978). This doctrine extends not only to joining all related causes but also, under appropriate circumstances, to all parties in a single action. *Van Horn v. William Blanchard Co.,* 88 *N.J.* 91, 108 (1981) (Handler, J., dissenting); *River Edge Savings and Loan Association Clubhouse Associates, Inc.,* 178 *N.J.Super.* 177, 182 (App.Div.1981).

[7]We note that the OAL has already amended a number of its rules that had previously defined certain types of orders as procedural and thus nonreviewable by the agency head. See *N.J.A.C.* 1:1-11.2 (discovery); –11.3 (depositions); –12.4 (intervention); and –14.3 (consolidation). In making these changes, the OAL indicated its intention to eliminate blanket rules that insulated ALJ orders from agency head review. 13 *N.J.R.* 3 (Jan. 8, 1981).

Emergency orders may have an extremely significant impact upon the regulatory policies of the agency itself. Such orders frequently regulate the activities of licensees and others subject to agency regulation. The agency head's authority to oversee agency regulatory policy is clearly implicated when emergency relief is granted in the context of a contested case. For that reason, it is the agency head who must be responsible for molding relief on an emergent basis and for the issuance of emergency orders. He alone has the power to grant emergency relief. Given his unique position and proximity to the litigation, an administrative law judge certainly has a role to play in the fashioning of emergency relief. However, an ALJ has no independent power to grant such relief. The ALJ's authority in this area must be limited to making an initial recommendation which the agency head is then free to accept or reject.

■ The rules, as currently written, do not fully effectuate this approach to emergency relief. *N.J.A.C.* 1:1–9.6 is framed in language which seemingly allows an administrative law judge to grant emergency relief, at least initially. When this rule is read in conjunction with *N.J.A.C.* 1:1–9.7(a) and (b), which provide that any ALJ emergency order must be sent immediately to the agency head, who then has 10 days in which to decide whether to review the order, it is possible to view the ALJ's order simply as a recommendation which the agency head must then adopt, reject or modify. The rule, however, does not clearly so provide. Since it is only the agency that has the regulatory power to grant emergency relief, a party to an agency proceeding is entitled to make a direct application for such relief to the agency head or one authorized to act in his absence. If the matter is pending before the OAL when the need for emergency relief arises, a party may apply initially to the ALJ, in which event the ALJ's decision on emergency relief can be a recommendation only, subject to binding action by the agency itself. Therefore, we overrule *N.J.A.C.* 1:1–9.6, insofar as it allows an administrative law judge to make an initial binding determination as to emergency relief in contested cases.

Appellant further challenges the validity of those rules that attempt to describe what constitutes a "contested case." *N.J. A.C.* 1:1–1.5 to 1.7. Appellant claims that the rules impermissibly encroach upon the agency head's statutory right to make the threshold determination of whether a particular case is contested.

■ In light of the regulatory needs of the agency and the nature of the claim presented to an agency, the agency head has the sole power to decide how best to proceed in a given case. See *Cunningham v. Department of Civil Services*, 69 *N.J.* 13 (1975). Under given circumstances, he can opt for either a rulemaking proceeding, an adjudication as a contested case or some other flexible proceeding which is appropriate to achieve the regulatory aims of the agency. See *Bally*, 85 *N.J.* at 338–39.

The OAL Act recognizes this authority. For example, in rulemaking, which is clearly an agency responsibility, the Act permits the agency head to recruit the services of the OAL to assist in the promulgation of agency regulations. See *N.J.S.A.* 52:14F–5(*o*). Even in the adjudication of contested cases, the hearing of which is now statutorily delegated to the OAL, the agency head retains primary and supervening jurisdiction. *Cf. Horn*, 85 *N.J.* at 656 (agency head has right to adjudicate a contested case without a bifurcated hearing). *N.J.S.A.* 52:14F–7(a) provides that: "Nothing [in the OAL Act] shall be construed to deprive the head of any agency of the authority . . . to determine whether a case is contested." [8] See also *N.J.S.A.* 52:14B–10(c).

---

[8]The statute is somewhat misleading when it speaks of the agency head's ability to decide "whether a case is contested." *N.J.S.A.* 52:14F–7(a). The obvious purpose of this provision is to confirm the discretionary power of the agency head to hear contested cases directly. The Legislature clearly intended to preserve the agency head's power to hear, as well as decide, a contested case. *Unemployed-Employed Council of New Jersey v. Horn*, 85 *N.J.* 646 (1980). The agency head exercises this discretionary authority to hear a contested matter directly by determining that the case is "not contested." He

It is the agency head who determines initially whether a case is contested and, if so, whether the case should be sent to the OAL for an adjudicatory hearing to be conducted by an administrative law judge. See *N.J.A.C.* 1:1–2.2(a) (OAL jurisdiction limited to cases submitted to it by the agency head after agency head determines that the case is contested and appropriate for a hearing).

These rules do not interfere with the agency head's ability to determine the character of cases before the agency, to select the appropriate procedure for resolving cases, or to hear and decide contested cases. *N.J.A.C.* 1:1–1.5 defines the phrase, "contested case," in terms which practically mirror the statutory definition of a contested case. See *N.J.S.A.* 52:14B–2(b) (defining "contested case" as dispute "in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined"). Moreover, *N.J.A.C.* 1:1–1.6, describing what is a "contested case," and *N.J.A.C.* 1:1–1.7, describing what is not a "contested case," are largely patterned on case law on this point. See, *e.g., Beckworth v. New Jersey Parole Bd.*, 62 *N.J.* 348 (1973); *East Windsor Reg'l Bd. of Ed. v. State Bd. of Ed.*, 172 *N.J.Super.* 547 (App.Div.1980). It seems clear that these provisions were not intended to usurp the agency head's authority to decide what constitutes a contested case or to determine the type of proceeding appropriate for resolving a particular matter. Rather than binding the agency in any way, these rules provide general guidelines for determining the types of controversies that rise to the level of a "contested case" for which an adjudicatory hearing is necessary. See *Bally*, 85 *N.J.* at 338. Therefore, the rules are valid and consistent with the OAL's mandate to develop uniform rules and standards to govern the conduct of contested cases. *N.J.S.A.* 52:14F–5(f).

---

does so solely for the purpose of withholding the case from the OAL, but he is not in any sense changing the contested character of the case.

■ In addition to the foregoing rules, appellant challenges several others: *N.J.A.C.* 1:1–3.2(c), which allows an administrative law judge to establish an accelerated or decelerated time schedule for the proceedings; *N.J.A.C.* 1:1–3.5 and –11.6, which give an administrative law judge the power to impose sanctions against any party "obstructing the orderly conduct of proceedings;" *N.J.A.C.* 1:1–13.1 to –13.4, which allow an administrative law judge to summarily decide cases; and *N.J.A.C.* 1:1–16.4, which establishes a time frame for filing exceptions with the agency head after the administrative law judge has heard the case and rendered his initial decision.

We uphold these rules because they involve matters that are related to and, indeed, essential to the proper conduct of administrative hearings in contested cases. They pose no threat to the reserved decisional and regulatory authority of the agency head. If the hearing process is to proceed in an orderly and expeditious manner, the administrative law judge must have the ability to control the conduct of the proceedings. This necessarily involves having the power to take such steps as setting reasonable time schedules and imposing sanctions to compel party compliance with his directives. These rules are of that character and are, therefore, clearly valid.

*N.J.A.C.* 1:1–3.5 on sanctions warrants special note. The rule allows an administrative law judge to take any "appropriate action" to punish party misconduct. While we have some reservations about the possible scope of this rule, we are satisfied that this power will be exercised reasonably and responsibly. We further note that when the sanctions imposed affect the status of the parties or the outcome of the case (*e.g.*, the striking of an affirmative defense), an aggrieved party may certainly seek agency interlocutory review to challenge the imposition of such sanctions. *N.J.A.C.* 1:1–9.7(a). In light of our disposition today, *supra* at 96–101, to the extent that the sanction rule may be perceived as immunizing ALJ sanction orders from

interlocutory review, it must be modified. In all other respects, the rule is valid.

## IV

In conclusion, we uphold the validity of the OAL regulations challenged in this appeal, except for the following rules: *N.J. A.C.* 1:1–3.5, –9.7(e) and (f), and –12.6, insofar as they bar or curtail agency review of ALJ orders; and *N.J.A.C.* 1:1–9.6, insofar as it allows an administrative law judge to grant emergency relief. In so holding, we confirm the right of the Office of Administrative Law to adopt rules which reasonably regulate the conduct of administrative hearings. The Office of Administrative Law is fully empowered to formulate rules and regulations that promote efficiency, uniformity, consistency and independence in the handling of contested cases. Nevertheless, in promulgating such rules, the OAL must be mindful of the ultimate statutory jurisdiction of the agency itself. OAL rules designed to regulate administrative hearings in contested cases cannot encroach upon the essential regulatory and decisional authority of the various State administrative agencies.

Accordingly, the rules promulgated by the Office of Administrative Law are affirmed in part and invalidated in part.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*Opposed*—None.