**BELL ATLANTIC—NEW JERSEY, INC.**

v.

**Herbert H. TATE, Jr., President, and Carmen J. Armenti, Commissioner of the New Jersey Board of Public Utilities, AT & T Communications of New Jersey, Inc., MCI Telecommunications Corporation, and the New Jersey Division of the Ratepayer Advocate.**

**Civil Action No. 97–935(NHP).**

United States District Court,
D. New Jersey.

April 18, 1997.

Frederic K. Becker, Anne S. Babineau, Christine D. Petruzzell, Katherine H. Wigness, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for Plaintiff Bell Atlantic–New Jersey, Inc.

Andrea M. Silkowitz, Assistant Attorney General, Elise Goldblat, Eugene P. Provost, Christian A. Arnold, Deputy Attorneys General, Peter Verniero, Attorney General of New Jersey, Division of Law, Newark, NJ, for Defendants President Herbert H. Tate and Commissioner Carmen J. Armenti.

Thomas F. O'Neil, III, Matthew B. Pachman, MCI Telecommunications Corp., Washington, DC, James H. Laskey, David R. Strickler, Norris McLaughlin & Marcus, Somerville, NJ, for Intervenor MCI Telecommunications Corporation.

Heikki Leesment, Deputy Ratepayer Advocate, James O'Hern, Assistant Deputy Ratepayer Advocate, Division of the Ratepayer Advocate, Newark, NJ, for Intervenor Division of the Ratepayer Advocate.

James F. Bendernagel, Jr., Sidley & Austin, Washington, DC, John J. Langhauser, Frederick C. Pappalardo, Monica A. Otte, AT & T Communications of New Jersey, Inc., Basking Ridge, NJ, Vincent J. Sharkey, Jr., Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Intervenor AT & T Communications of New Jersey, Inc.

POLITAN, District Judge.

This matter comes before the Court on application by plaintiff, Bell Atlantic–New Jersey, Inc., for judgment awarding declaratory relief and permanent injunction of the enforcement of an order entered by the defendants, President Herbert H. Tate, Jr., and Commissioner Carmen J. Armenti of the New Jersey Board of Public Utilities. AT & T Telecommunications of New Jersey, Inc., MCI Telecommunications Corporation, and the New Jersey Division of the Ratepayer Advocate were permitted to intervene in this action. Oral argument was heard in this matter on April 14, 1997. Based upon a thorough review of the record, and as set forth more fully below, plaintiff's request for

relief is **DENIED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

### STATEMENT OF FACTS

A rather exhaustive statement of the history of this matter is necessary in order to address it completely. Plaintiff, Bell Atlantic–New Jersey ("BA–NJ"), is a local operating company of Bell Atlantic. Since the 1982 divestiture of American Telephone & Telegraph Company ("AT & T"), Bell Atlantic, through its local operating companies, has been authorized in the Mid–Atlantic states to provide telephone service to businesses and residents within certain defined geographic regions dubbed "local access transport areas" ("LATAs").[1]

This service, called "intraLATA," includes "local calls"—typically calls within a city or town and its immediate surrounding areas—as well as "intraLATA toll calls"—calls covering a distance beyond local calls. There are three LATAs in New Jersey. Bell Atlantic is presently prohibited by the consent decree from providing service between LATAs, or "interLATA" service. Generally, when a customer dials a toll call, the call is carried by BA–NJ if the call is intraLATA and by the long distance carrier selected by the customer if the call is interLATA.

AT & T and other long distance companies provide interLATA service for residents and businesses in the Mid–Atlantic states and throughout the country. These companies urged the New Jersey Board of Public Utilities ("BPU")[2] to allow them to compete in the intraLATA on an access code basis, whereby a long distance company could carry intraLATA toll calls if a customer dialed a five-digit access code (*e.g.*, 10XXX) to identify a carrier other than BA–NJ.

On June 30, 1994, the BPU issued an order permitting the long distance carriers to provide intraLATA toll service in New Jersey on an access code basis. If a customer did not utilize the access code, then BA–NJ would carry the call. This regulatory approval to offer intraLATA toll service in New Jersey did not, however, give AT & T equal access to customers, as Bell Atlantic does not provide AT & T (or any other intraLATA competitors) equal access through presubscription.[3]

The BPU's 1994 order and the surrounding hearings also contemplated that the BPU would conduct further proceedings to determine whether to require intraLATA presubscription in New Jersey. On January 24, 1995, the BPU initiated a proceeding to determine whether it should approve intraLATA toll competition on a presubscription basis in each of New Jersey's LATAs.

After receiving exhaustive comments from all parties involved (which included BA–NJ, AT & T, MCI, and the Ratepayer Advocate, among others), the BPU conducted sixteen days of evidentiary hearings between May 1, 1995, and June 21, 1995. The parties in the case *sub judice* participated fully in the hearings, and filed detailed post-hearing initial and reply briefs.

The BPU voted at its December 8, 1995 Agenda Meeting to order presubscription in New Jersey. On December 14, 1995, the BPU issued an Order Approving Presubscription and Proposal of Rules. *I/M/O The Investigation of IntraLata Toll Competition for Telecommunications Services on a Presubscription Basis*, Dkt. No. TX94090388, 1995 WL 784179 (Dec. 14, 1995) ("BPU Order"). More specifically, the Order states that "the [BPU], by this Order, approves intraLATA toll competition on a presubscription basis, and ... the [BPU] herewith approves for publication in the New Jersey Register proposed rules which would imple-

1. A LATA is a geographical area within which a local exchange company is permitted to provide service. It "marks boundaries beyond which [Bell Atlantic–New Jersey] may not carry telephone calls." *United States v. Western Elec. Co.*, 569 F.Supp. 990, 994 n. 9 (D.D.C.1983).

2. The BPU has general supervision, jurisdiction, and control over telecommunications companies operating in New Jersey. N.J.S.A. 48:2–13.

3. "Presubscription" is the ability of a telephone customer to instruct their local exchange carrier to deliver their intraLATA toll calls to the carrier of their choice, rather than their local exchange carrier automatically, without the necessity of dialing a cumbersome access code. This right of equal access is currently available only in the interLATA market in New Jersey.

ment intraLATA toll competition on a pre-subscription basis." *Id.* at 1.[4] The BPU un-equivocally stated that presubscription "shall be the policy of this State." *Id.* at 39.

The BPU was aware of pending federal legislation, the Federal Telecommunications Act of 1996 ("the Act"), but stated that it would be irresponsible for the BPU to wait for "uncertain federal legislation." The BPU stated that it would adjust its regulations if required by the still-pending legislation. *Id.* at 39. The BPU made it clear that presubscription should be implemented as rapidly as possible, and it attached proposed rules regarding various details of implementation, such as a schedule, cost allocation, and business office practices.

The BPU published rules regarding pre-subscription in the *New Jersey Register* on January 16, 1996, and those rules were adopted with some modifications on August 5, 1996. One modification made was to the date of implementation, which was eventually moved to May 5, 1997.[5] BA–NJ had com-mented extensively on these proposals, and it was in large part at its urging that the implementation date was modified.

BA–NJ had claimed during the comment period that the BPU Order was merely a "preliminary" determination of the presub-scription issue. The BPU rejected that con-tention and stated that it was not prelimi-nary, but "an affirmative determination that presubscription shall be the policy of the State of New Jersey." 28 N.J.R. 3827 (Aug. 5, 1996).

Moreover, by August 1996, the Act had been passed, and the BPU stated that the Act had no impact on what it had done:

> The [BPU] disagrees that the Act has a direct impact on intraLATA toll presub-scription. As the Advocate correctly sug-gested in its comments ... "the [BPU] issued its Order requiring intraLATA Toll Presubscription prior to the cut-off date stated in the Act (December 19, 1995)." As such, the Order is "grandfathered" and

these rules would not be prohibited by the Act.... Therefore, since the [BPU's] De-cision and Order ... is grandfathered un-der the Federal Act, it has no impact on the implementation of that policy decision and these rules are thus unaffected by any provision in the Act.

*Id.* at 3828.

BA–NJ filed this action alleging that the BPU's rule fixing May 5, 1997, as the com-mencement date for full statewide presub-scription is void and unenforceable. BA–NJ seeks to permanently enjoin the action be-cause it is preempted by the Act, which limits a state's ability to order presubscrip-tion unless it had issued an order by Decem-ber 19, 1995, requiring the implementation of intraLATA toll dialing parity.

### DISCUSSION

The eye of this storm is the Federal Telecommunications Act of 1996. 47 U.S.C. § 271. The clear purpose of the law was to replace telecommunications monopolies and regulation with competitive markets:

> [The Act] promotes competition and re-duces regulation in order to secure lower prices and higher quality services for American telecommunications consum-ers.... [The Act] opens all communica-tions services to competition. The result will be lower prices to consumers and busi-nesses, greater choice of services, more innovation, a competitive edge for Ameri-can businesses, and less regulation. In-deed, the enormous benefits to American businesses and consumers from lifting the shackles of monopoly regulation will al-most certainly earn the ... Act ... the distinction of being the most deregulatory bill in history.

H.R.Rep. No. 204, 104th Cong., 2nd Sess., 47–48, *reprinted in U.S.Code Cong. & Ad-min. News*, 10–11 (March 1996).

The Act does several things. With respect to local telephone service, it provides that regional Bell operating companies

---

**4.** The BPU Order is exhaustive and contains nu-merous findings of fact and conclusions of law mandating implementation of intraLATA presub-scription and discussing how best to do so.

**5.** The modification was also published as a pro-posed rule, and the date was officially adopted on January 8, 1997.

("RBOCs"), such as BA–NJ, must make available their infrastructure to other telecommunications providers, and must negotiate in good faith with such entities, so that such entities can provide competitive local telephone exchange service. See 47 U.S.C. §§ 251 and 252.

With respect to long distance service (interLATA), RBOCs are permitted to provide such service within their home region (referred to as "in-region interLATA"). There are, however, several conditions to this provision. Most importantly, BA–NJ must allow its customers to presubscribe to another company to carry their intraLATA toll calls without first having to dial that carrier's access code. 47 U.S.C. § 271(e)(2)(A). This is referenced in the Act as "intraLATA toll dialing parity."

■ Finally, with respect to intraLATA markets, the Act imposed a federal moratorium prohibiting certain states with more than one LATA from requiring intraLATA toll dialing parity until the earlier of February 8, 1999, or the date that the state's RBOC achieved entry into the in-region interLATA market. This moratorium did not apply, however, where a state issued an order requiring such parity by December 19, 1995. More specifically:

> Except for single-LATA States and States that have issued an order by December 19, 1995, requiring a Bell operating company to implement intraLATA toll dialing parity, a State may not require a Bell operating company to implement intraLATA toll dialing parity in that State before a Bell operating company has been granted authority under this section to provide interLATA services originating in that State or before 3 years after February 8, 1996, whichever is earlier. Nothing in this subparagraph precludes a State from issuing an order requiring intraLATA toll dialing parity in that State prior to either such date so long as such order does not take effect until after the earlier of either such dates.

47 U.S.C. § 271(e)(2)(B). This language is also known as the "Breaux–Leahy Amendment," because it was sponsored by Senators Breaux and Leahy as a means to reduce the preemptive effect of earlier versions of the legislation. It is also referred to as a "grandfather clause" because it permitted states that had ordered intraLATA presubscription by December 19, 1995, to proceed to effectuate that requirement after that date.

Simply put, the grandfather clause allowed those states who had initiated proceedings regarding presubscription and had ordered that presubscription would be implemented in that state to continue doing what they started and to utilize their own timeframes. The Court is thus faced with interpreting the phrase "issued an order by December 19, 1995, requiring a Bell operating company to implement intraLATA toll dialing parity," and determining whether the BPU Order satisfied that language.

■ Judges must not feel themselves to be free from the confines of the plain meaning of text when applying statutes. See generally, Richard A. Posner, The Problems of Jurisprudence (1990). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed." Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). If the meaning is plain, "and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." Id. at 485, 37 S.Ct. at 194. See West Virginia Univ. Hosps. v. Casey, 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1146–47, 113 L.Ed.2d 68 (1991) (stating that courts presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use); Kowalski v. L & F Prods., 82 F.3d 1283, 1287 (3d Cir.1996).

■ Although a point of dispute amongst commentators and some jurists, a court may look to legislative history even where the plain meaning of a statute settles the question as to legislative intent. An examination of legislative history confirms that nothing in that history calls into question the strong presumption that Congress expressed its intent through the language it chose. Bundens v. J.E. Brenneman Co., 46

F.3d 292, 305 (3d Cir.1995). The statements of the sponsors of legislation are persuasive guides in that vein. *See North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982); *Tyree v. Riley,* 783 F.Supp. 877, 884 n. 13 (D.N.J. 1992).

■ Each section of a statute should be read in the context of the overall policy of the legislation in order to avoid frustrating legislative intent. *See, e.g., Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990) (stating that in determining the meaning of a statute, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1198 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994) (asserting that the language of a statute "must be analyzed against the background of the statute as a whole and its legislative purpose").

■ More specific to this Court's inquiry, grandfather provisions which prevent preemption must not be given a narrow construction. *See Housatonic Cable Vision Co. v. Department of Pub. Util. Control,* 622 F.Supp. 798, 811 (D.Conn.1985) (holding that a "restrictive reading of the grandfather provisions ... would undermine the purposes and structure of the ... Act").

■ BA-NJ's position is simple. It contends that an order "requiring a Bell operating company to implement" intraLATA presubscription means that a state must have each and every rule regarding presubscription in full force and effect, with every "t" crossed and every "i" dotted. The Act does not so require. To do so would, in effect, make all the effort by the BPU a nullity. All the grandfather clause to the Act requires is that a state determine whether it will proceed with presubscription and publish an order to that effect prior to December 19, 1995.

Indeed, the last sentence of § 271(e)(2)(B) is telling. It states that:

Nothing in this subparagraph precludes a State from issuing an order requiring intraLATA toll dialing parity in that State prior to either [before a Bell operating company has been granted authority under this section to provide interLATA services originating in that State or before 3 years after February 8, 1996, whichever is earlier] so long as such order does not take effect until after the earlier of either such dates.

47 U.S.C. § 271(e)(2)(B). The language there refers to an order requiring interLATA toll dialing parity issued after December 19, 1995, which does not qualify for the grandfather clause and which therefore may only take effect in February 1999 or earlier if the RBOC obtains in-region long distance authority before that time. There is a strong implication, then, that a state issuing an order before the December 1995 date would be free to actively implement presubscription at any time that state's public utility commission chooses. The issuance of the order *requiring* presubscription must have occurred before December 19, 1995, but the statute sets no deadline for the *implementation* of that requirement after the order has been issued.

If, perhaps, the grandfather provision of that Act had stated that those states which "had implemented" presubscription by the December 1995 date would be exempt from the Act's moratorium, BA-NJ's position would have some merit. It is undisputed that the BPU did not adopt rules on *how* presubscription would be implemented until the middle of 1996. The grandfather provision, however, merely required that a state have *ordered* the implementation of presubscription.

Senator Breaux's explanation for the grandfather provision is instructive:

I think the basic thrust of this telecommunications bill is to promote competition.... States should be able to move forward.... [T]hose States that ... already have issued orders to require [intraLATA] dialing parity would be exempted from that prohibition in a way that would allow that State to take action on ordering parity.

141 *Cong. Rec.* S.8310, 8348–49 (June 5, 1995). It is clear that actual implementation

of a program was not required under the grandfather clause. The deadline was based "on the states' issuing the order, not the effective date." 141 *Cong. Rec.* § 8350 (daily ed. June 14, 1995).

On June 5, 1995, Senator Leahy identified several states which, at the original proposed grandfathering date of June 1, 1995, had issued orders requiring intraLATA toll dialing parity. He explained that those states, which included Illinois and Wisconsin, would not be preempted by the proposed moratorium on state deregulation.

Illinois had issued an order substantially similar to the BPU's order on April 7, 1995, wherein the Illinois Commerce Commission entered an "interim order" resolving as a matter of policy that intraLATA calling would be implemented in Illinois. *In re Adoption of Rules Relating to Intra–Market Service Area Presubscription*, Dkt. No. 94-0048, 1995 WL 261355 (Ill. Comm. Comm'n, April 7, 1995). The "interim order" also resulted, as in New Jersey, in the publication of proposed rules which remained subject to a notice period. Illinois did not adopt final rules which compelled action by any entity until October 3, 1995, well past the original grandfather date of June 1, 1995.

Therefore, at the time Senator Leahy stated that Illinois would be grandfathered by the June 1, 1995 deadline, Illinois was at substantially the same procedural stage as New Jersey was on December 14, 1995, relative to the December 19, 1995 deadline which was ultimately enacted. As of June 1, 1995, Illinois had ordered intraLATA presubscription, but was still in the middle of adopting final rules to implement its requirement. On December 14, 1995, New Jersey was in the same position.

Hawaii was also grandfathered, yet its order clearly anticipated a subsequent administrative rulemaking. *In re Investigation of the Communications Infrastructure of the State of Hawaii*, Dkt. No. 7702, 1995 WL 553009 (Hawaii Pub. Util. Comm'n, Aug. 14, 1995). New York's order left open certain implementation details, such as cost-allocation and implementation schedules. *In re Impact of the Modification of Final Judgment*, Case 28425, Opinion No. 94-11, 1994

WL 323460 (N.Y. P.S.C., April 4, 1994). Michigan's order also left an open-ended implementation schedule based on the technical readiness of Ameritech Michigan and GTE North Inc.'s switches. *In re MCI Telecommunications Corp.*, Case No. U–10138, 1995 WL 217268 (Mich.P.S.C., March 10, 1995). Michigan also provided for subsequent administrative processes. *In re GTE North, Inc.*, Case No. U–11050, 1996 WL 631230 (Oct. 7, 1996).

Similarly, in Wisconsin, the most current order of the Wisconsin Public Service Commission as of June 5, 1995, was a July 7, 1994 order which required only that as a "general policy, all local exchange carriers in this state shall provide intraLATA 1+ dialing and presubscription as soon as possible." *In re Investigation into the Extent of Competition in the IntraLata Toll Telecommunications Market and the Level of Regulation for IntraLata Toll Telecommunications Service*, Dkt. No. 05–T1–119 at 4, 1994 WL 899930 (Wisc.Pub.Serv.Comm'n, July 7, 1994).

It defies logic that the Wisconsin order would allow the state to be grandfathered but New Jersey's order would not allow New Jersey to be grandfathered. Wisconsin failed to supplement its July 1994 order with all of the necessary details in its subsequent order of July 25, 1996. Specific requirements relating to implementation were deferred until after the RBOC in that state submitted a proposed implementation plan.

Although BA–NJ points to other states who were grandfathered to show that those states had done substantially more in the way of promulgating rules regarding presubscription, the fact remains that several states were grandfathered under the Act by doing as much (and in some cases far less) than New Jersey did. Similarly, some of the other states which were grandfathered left the implementation date open-ended.

██ If BA–NJ's position were adopted, then states which had ordered presubscription by the grandfather clause date but had been conducting hearings and proposing rules on the implementation of presubscription would have to scrap all of that work because the rules would not have been final-

ized. This is not within the plain meaning of the statute. The fact that state commissions determine to delay actual implementation is not surprising. In fact, several of the state commissions left their dockets open in case further proceedings were necessary. *See, e.g., In re Investigation into IntraLATA Presubscription,* Dkt. No. 930330–TP, 1995 WL 111239 (Fla.P.S.C., Feb. 13, 1995).

 BA–NJ forcefully argues that the December 1995 BPU Order was precatory because it simply established a "policy," not a requirement. The BPU Order, which is voluminous, did both. A policy may be a requirement, and vice versa. The crucial examination is whether the policy is merely precatory or is binding. *See United States v. Kramer,* 757 F.Supp. 397, 435–36 (D.N.J. 1991) (recognizing the distinction between nonbinding general statements of policy and policies which establish binding norms).

 A nonbinding policy or guideline can simply be announced by the agency without public input. When a New Jersey administrative agency wishes to establish a binding policy, however, it must use a rulemaking proceeding, adjudication, "or some other flexible proceeding which is appropriate to achieve the regulatory aims of the agency." *In re Uniform Admin. Proc. Rules,* 90 N.J. 85, 104, 447 A.2d 151 (1982).

The BPU certainly did not one day magnanimously determine that presubscription would take place in New Jersey. Rather, it painstakingly reviewed a voluminous written record, heard many days of testimony, and unconditionally required that presubscription would be the policy of New Jersey. This is a hypertechnical area and the BPU used a process that would ensure that all of the parties to be effected by its determination would be heard and able to provide some input into the proceeding.

 Indeed, the BPU answered the question when it rejected BA–NJ's contention that the order was a "preliminary" determination and stated that it was "an affirmative determination that presubscription shall be the policy of the State of New Jersey." 28 N.J.R. 3827 (Aug. 5, 1996). The BPU Order is clear when it states that "intraLATA toll

presubscription is in the public interest and *shall be the Policy of this State.*" BPU Order at 39 (emphasis added).[6]

The BPU Order also makes clear that presubscription should be implemented as quickly as possible, to be completed within a year of the effective date of the proposed rules. *Id.* at 31. The BPU also rejected BA–NJ's argument that it should wait for the pending federal legislation to become law. To wait for the legislation, the BPU stated, "would not be responsible regulation on the part of the Board." *Id.* at 39.

Given the plain meaning of the statute and the clear mandate of the BPU Order, the BPU met the requirements of § 271(e)(2)(B) by issuing its December 14, 1995 order. Therefore, the implementation date of May 5, 1997, will not be disturbed by this Court.

### CONCLUSION

Based upon the foregoing, BA–NJ's application for judgment awarding declaratory relief and permanent injunction of the implementation date of the BPU's December 14, 1995 order is hereby **DENIED**, and plaintiff's complaint is therefore **DISMISSED WITH PREJUDICE.**

---

**6.** The word "shall," when utilized in laws, directives, and the like, means "must" or "is or are obligated to." *Random House Webster's College Dictionary* 1230 (1991).